Filed 3/2/23  Marriage of Guldseth CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| In re the Marriage of ALISON and DAVID GULDSETH. | D077308 |
| ALISON GULDSETH, | |
| Respondent, | (Super. Ct. No. 18FL000052N) |
| v. | |
| DAVID GULDSETH, | |
| Appellant. | |

APPEAL from orders of the Superior Court of San Diego County, Cynthia A. Freeland, Enrique E. Camarena, and Victor M. Torres, Judges. Affirmed.

David Guldseth, in pro. per., for Appellant.

No appearance for Respondent.

I.

INTRODUCTION

Appellant David Guldseth, proceeding in propria persona, appeals from multiple final and/or postjudgment orders of the trial court arising out of the dissolution of his marriage to Alison Guldseth.[1] The orders from which David appeals involve issues of child custody and visitation, the characterization and division of property, child and spousal support, attorney fee contributions, and the sale of the parties' marital residence.[2] Alison has not filed a respondents brief and has not otherwise appeared in this appeal.

We conclude that David has forfeited his challenges to the trial court's rulings by failing to present a brief that meets basic appellate standards, which require parties to present coherent and legally supported reasons for reversal. Further, to the extent that we can discern what David's challenges appear to be, we conclude that he has failed to demonstrate reversible error with respect to those issues. We therefore affirm the trial court's orders being challenged in this appeal.

---

[1] Because the parties share the same last name, we will refer to them by their first names for clarity.

[2] David filed 10 notices of appeal, all of which have been filed under case No. D077308, and two of which have been dismissed. In these notices of appeal, David typically identifies multiple orders or hearing dates as the orders from which he is appealing. The orders and rulings David is challenging were entered by at least three different judges over a period of approximately 15 months.

## II.

## BACKGROUND[3]

Alison filed a petition to initiate a marriage dissolution proceeding on January 3, 2018. At that point in time, Alison and David had been married for almost 20 years and had four minor children and one adult child.

In February 2018, the parties reached a stipulation for temporary orders regarding custody, visitation, and support. The court issued interim orders consistent with the parties' stipulation, which included granting Alison legal and physical custody of the minor children, and granting David visitation every other weekend morning and every Wednesday afternoon.

The court issued its "Finding and Order After Hearing" (some capitalization omitted) regarding custody in October 2018. In considering what custody arrangement would be best for the minor children, the court found that although "the evidence did support the conclusion that, at times, David has demonstrated a lack of good judgment" with respect to his interactions with the children, the court could not conclude at that point in time that he "put the children at risk from a health or safety standpoint." The court also found that although "David did discipline the children

---

[3] David has designated a record that spans more than 2250 pages of Clerk's Transcript and just under 2000 pages of Reporter's Transcripts. It is apparent from this record that the parties have engaged in protracted litigation regarding all aspects of the dissolution of their long-term marriage, including issues involving the characterization and division of property, custody and visitation, child and spousal support, as well as multiple requests for sanctions and attorney fees. Despite this lengthy record, or perhaps because of it, David's briefing does not present this court with a thorough and coherent timeline of the relevant events and proceedings in the action. We therefore do our best to distill from the record a sufficiently comprehensive summary of the relevant background for purposes of this appeal.

physically and did exert control over Alison," it was not ready to conclude that his conduct "constituted domestic violence." The court rejected the conclusion that David's spanking "constituted child abuse or sufficiently disturbed Alison's peace of mind to constitute domestic violence." The trial court did conclude "that David engaged in controlling behavior" throughout the marriage, but then analyzed "whether this exercise of control, per se, is sufficient to support a finding of a history of abuse," and "answer[ed] this question in the negative."

The court also rejected David's contention that Alison had engaged in conduct that would support a finding of a history of abuse on her part. The trial court specifically noted that David had failed to convince it that his version of events was more true than Alison's differing version.

After taking into consideration the four factors set forth in Family Code section 3011 (i.e., the health, safety and welfare of the children, any history of abuse, the nature and amount of contact with both parents, and the use or abuse of controlled substances or alcohol), the trial court concluded that the parents should share legal custody of the minor children. The court thereafter adopted the recommendations of a Family Court Services (FCS) mediator, with certain modifications, with respect to physical custody. In essence, the trial court granted Alison primary physical custody, and provided that David would have custody of the children during two two-hour "midweek dinner visits," as well as on alternate weekends.

The court set David's monthly child support obligation at $5,860, based on David having an 11 percent time share, as set out in the court's custody order. The court also ordered that David pay Alison spousal support of just over $4,700 per month.

4

A few months later, both parties moved ex parte, seeking to modify the custody order. The parties then stipulated to a change in custody of one of the minor children (the eldest of the now three remaining minor children) to permit him to reside primarily with David.

The court eventually set a time for a bifurcated trial to take place regarding the custody issues before Judge Enrique E. Camarena in October 2019. Before this time, Judge Cynthia A. Freeland had made most of the orders in the parties' case.

In June 2019, before the scheduled custody trial, Alison moved ex parte for an order for the sale of the marital residence. Alison contended that she had been granted exclusive use of the residence and had been made responsible for the mortgage and all utilities. Alison asserted that she lacked the resources to pay the expenses on the home, including the property taxes, and indicated that the property was at risk of foreclosure. According to Alison, she had reached out to David through his attorney to try to resolve the financial issues regarding the residence, but her attempts had been ignored. Judge Freeland denied Alison's request to list the marital residence for sale, but set all issues other than custody, which remained on calendar for trial before Judge Camarena, to be considered at a one-day trial to take place on December 10, 2019.

In the meantime, in late June 2019, David filed a request for order seeking to modify the court's interim spousal and child support orders.

By early October 2019, David was representing himself in the dissolution action. David filed a peremptory challenge to Judge Freeland on October 2, 2019, which she denied as untimely.

The trial on the custody issues proceeded to take place over six days in October and November 2019.

5

While the custody trial was pending, David moved ex parte for an order regarding the mortgage payments on the marital residence. David complained that Alison was "[m]issing [h]ouse [p]ayments" and indicated that he was concerned about the effect on his credit, but his papers did not seek any particular relief from the court. The trial court denied David's request for an order regarding the marital residence but indicated that the issue of the disposition of the marital residence would be addressed at the trial regarding the characterization and division of the parties' property that was set for December 10, 2019.

Also while the custody trial was pending, Judge Freeland made temporary support orders just for November 2019 and December 2019, and continued any final determination of the support issues pending the outcome of the custody trial. Judge Freeland also issued a "Judgment of Dissolution" as to the status of the parties' marriage, thereby determining that the parties were no longer married.

At the conclusion of the custody trial, Judge Camarena made temporary orders that granted both parties time with the children during their Christmas break and indicated that a formal written statement of decision regarding custody would be forthcoming.

Judge Camarena then issued a proposed statement of decision regarding custody in early December 2019. In the proposed statement of decision, the court made a finding that neither party had demonstrated that domestic violence "has occurred," and the court therefore determined that "the presumption [against granting custody to an individual who perpetrates domestic violence] pursuant [to Family Code] section 3044 does not apply." The court also indicated that it had considered the policy of the State of California that parents share in decision-making rights and responsibility of

6

child rearing, and had also considered the preferences of the minor children as expressed in the evaluator's report. The trial court thereafter made several detailed and specific findings regarding the "issue of the bests interests of the Minor Children." After setting out these findings, the court's proposed order provided for the parties to share legal custody of the children and specified that one of the three still-minor children would reside primarily with David, while the other two would reside primarily with Alison. David and Alison were each granted visitation with the other child/children on alternating weekends, and at certain other times, depending on the child. The proposed order provided for a change in physical custody of the two youngest children at the conclusion of the school year, when the parents would begin to share equally the physical custody of those children.

David filed a 23-page document outlining his objections to Judge Camarena's proposed statement of decision regarding child custody. Among his many other objections, David asserted that rather than the proposed order's transition to shared custody at the end of the school year, the trial court should have adopted a custody evaluator's recommendation, without alteration, that the two youngest children maintain the current schedule for a period of eight weeks, only, starting when "counseling [for these children] begins," and, after the completion of eight weeks of counseling, a "transition period of four weeks of counseling wherein the children are gradually transitioned to a fully shared parenting schedule with each parent having two overnights during the week plus alternating full weekends."

David also filed a request for order seeking to modify the court's custody and visitation orders, even though the court had not issued its final orders regarding custody. In addition, David filed another 26-page document

7

of objections and requested changes to the proposed statement of decision on the issues of child custody and visitation.

Judge Camarena issued the court's final statement of decision on child custody and visitation on December 19, 2019. The final statement of decision indicated that the court had received and considered David's objections, as expressed in multiple documents filed with the court. The court indicated that to the extent that David's objections presented "new and different evidence," the court did not consider such evidence because the court's decision "can only be based on evidence introduced at the hearing." The trial court also addressed David's concern that the proposed statement of decision permitted Alison to relocate with the children, explaining that the trial "did not involve a relocation request." The court rejected David's request that the court issue an order "forever disallow[ing] Ali[son] from relocating from San Diego County." The court also generally disposed of David's other objections.

The final statement of decision adopted the proposed statement of decision with only minor modifications. The trial court indicated that its final statement of decision was intended to "constitute a final custody determination," and that "[a] showing of a significant change of circumstances will be required [in the future] in order for the court to modify any of these provisions unless the change is agreed to by both parties."

In early January 2020, Judge Freeland conducted a trial on the financial and property issues, as well as competing attorney fees requests that the parties had filed. Approximately a month later, the court issued a proposed statement of decision on child and spousal support, real property, assets and debts, reimbursements and reallocations of costs, as well as attorney fees and costs. With respect to Alison's request to sell the marital residence and David's request to be permitted to buy out Alison's interest, the

court indicated that because David had failed to meet his burden to demonstrate that he would be able to refinance the mortgage, the court was left without sufficient information "to be able to order a buy-out." The court concluded that directing the sale of the marital residence would be the most "efficient and expedient" way to ensure the parties did not continue to accumulate further debt. David filed a 30-page brief outlining his objections to virtually every aspect of the proposed statement of decision.

The day after the trial court issued its proposed statement of decision on the property and financial matters, Alison moved ex parte for an emergency custody order granting her sole legal and physical custody of the parties' eldest remaining minor child, who had been residing primarily with David, citing her concern for the mental health of that child. In response to Alison's request for sole physical custody of the parties' eldest minor child, David requested that the court grant him primary physical custody of the other two children.

On February 4, 2020, David filed a notice of appeal related to Judge Camarena's December 19, 2019 final statement of decision as to the issue of custody.

Judge Freeland issued a final statement of decision regarding the property and financial issues in March 2020. The court ordered the sale of the marital residence and further ordered that the proceeds from the sale of the residence were to be used to pay various offsets and reimbursements, and that any remaining amount was to be split between the parties. The court also ordered David to pay monthly child support to Alison in the amount of $5,107 until June 1, 2020, after which David's monthly child support obligation would be reduced to $2,919. With respect to spousal support, the court ordered David to pay monthly spousal support in the amount of $3,800.

9

The court determined that because of the great disparity in the parties' incomes, it was appropriate to order that David contribute $35,000 toward Alison's attorney fees. The court denied David's request for attorney fees.

A week later, David filed a request to modify the child support and spousal support orders that had just taken effect. David asserted, as he had before and during trial on the financial matters, that his "income ha[d] significantly decreased due to disability."

On March, 9, 2020, David filed a notice of appeal from the trial court's final statement of decision regarding the property and financial issues.

Also in early March 2020, Judge Freeland held a hearing regarding the parties' competing requests to modify the final child custody orders. The court noted that the custody order was final, and that therefore a significant change in circumstances was required to revisit those orders. The court found that the involuntary disenrollment of the parties' eldest minor child from school and lack of consistent therapy for that child constituted changed circumstances. The court declined to change primary physical custody from David to Alison, however, out of concern that doing so would be even more detrimental to the child's mental health. With respect to the two youngest children, however, the court concluded that a mental health counselor's determination that the two youngest children were unhappy with having increased time with David constituted a changed circumstance that warranted at least one change to the December 2019 final custody order. The court ordered that the step-up in the youngest children's custody time with David that was supposed to occur at the end of the school year as set forth in the December 2020 final custody order would no longer take place.

In April 2020, Alison moved ex parte for court assistance with respect to the sale of the marital residence. Alison indicated that David was refusing

to participate in the sale process and had refused to sign the listing agreement. Alison stated that she was unable to pay the mortgage on the property as a result of David's failure to pay his child or spousal support obligations during the litigation, and she requested an order granting her authority to sign documents on David's behalf in order to effectuate the sale, or, in the alternative, an order directing David to sign all documents necessary to effectuate the sale.

On June 3, 2020, David filed a notice of appeal from the trial court's March 2020 order regarding custody of the minor children.

Also in June, David moved ex parte seeking an order permitting him to move into the marital residence, and he also filed a document requesting removal of Judge Freeland from the case "for cause." Less than a week later, David filed another set of ex parte requests. David sought orders to "set aside" the March 2020 custody order, to "set aside and vacate" the final statement of decision regarding the property and financial matters, and to "remove Judge Freeland for cause." (Some capitalization and underscoring omitted.) Judge Freeland denied David's ex parte request for control of the marital residence and rejected his requests to disqualify her.

The same month, Alison filed a request for an order for (1) attorney fees and costs, (2) a determination of the arrears for support and add-ons David still owed, and (3) the enforcement of prior orders regarding the sale of the marital residence. In her supporting declaration, Alison stated that David was still refusing to participate in the sale of the marital residence. Alison also noted that despite the court's order that David pay her attorney $2,000 per month as of April 1, 2020, he had already missed two consecutive payments. In addition, Alison asserted that David owed arrears of $34,145

11

for child and spousal support. Alison requested an additional contribution of $30,000 toward her attorney fees.

It appears from the record that as of late July 2020, David had engaged the services of a new attorney. At that point in time, David filed a declaration in response to Alison's June request for order regarding support arrears and enforcement of prior court orders, asserting that he had a request for order regarding multiple financial issues that the court had still not addressed, and he further asserted that he was entitled to a modification of the trial court's final statement of decision regarding property and financial issues because that final statement of decision failed to take into account that David was "disabled from November 1, 2019 through April 16, 2020." David again asked to be able to purchase Alison's share of the marital residence, rather than be required to sell the property on the open market. David also contended that the trial court should not entertain Alison's requests regarding arrears, enforcing the prior orders, or modifying the prior orders because many of those orders were being appealed, and, he asserted, the court should maintain the status quo while those appeals were pending.

In August 2020, David filed a request for order seeking a stay of the trial court's orders regarding "property division, reimbursements, credits, support arrears, and attorney's fees and costs," pending David's appeal of the trial court's March 2020 final statement of decision as to those issues. David asserted that he was not required to post an undertaking in connection with the requested stay to prevent the ordered sale of the marital home.

Also in August, Judge Freeland proceeded with a hearing regarding the parties' competing requests on various financial matters. The court determined that David owed spousal support arrears in the amount of $7,600 and child support arrears in the amount of $9,261 for January 2020 through

12

March 2020.  The court granted Alison's motion for attorney fees as sanctions, awarding her $5,000 pursuant to Family Code section 271.  The court confirmed its earlier attorney fee award and ordered David to immediately pay the full amount due to Alison's attorney.  The court delayed making rulings with respect to support arrears for April 2020 through August 2020 and issues related to the sale of the marital residence, including determinations regarding the distribution of proceeds from the sale of the residence.

On August 24, 2020, David filed a notice of appeal identifying as the order from which he was appealing as the court's "hearing dates 8/13/20 [and] 8/18/20 which are ruling on matters that I have under appeal in case currently pending D077308."

The trial court heard David's request for a partial stay of litigation in August 2020.  On that date, the court rejected David's argument that he was not obligated to post an undertaking in order to obtain a stay the order directing the sale of the marital residence.  The court concluded that although David was required to post an undertaking, Alison had not provided the court with evidence as to the amount of an undertaking that would be sufficient to protect her interests, and therefore the court could not make an order in that respect.  The court invited the parties to "seek appropriate relief on an expedited basis," however.

Less than two weeks later, Alison filed a request for emergency relief, seeking an order directing David to comply with the order requiring the sale of the marital residence, or, alternatively, the appointment of an elisor to sign all of the documents necessary to effectuate the sale.  Alison noted that the parties were delinquent on the mortgage and the lender was pursuing the foreclosure process.  David objected to Alison's request for court assistance

regarding the sale of the marital residence. He contended that since he was "appealing the order to sell the home," any order granting Alison the relief she sought "would sabotage [his] appeal and effectively render [his] appeal moot." The court issued an order granting Alison's request to appoint an elisor for purposes of completing the listing agreement. The same day, David filed a notice of appeal in which he indicated that he was appealing "rulings on matters that are already under appeal in case D077308" from "9/14/20, 9/28/20, 8/28/20." (Some underscoring omitted.)

In the meantime, in mid-September 2020, Judge Freeland issued an order addressing outstanding issues regarding David's March 2020 request to modify child and spousal support. The court considered David's repeated claims that the court was failing to adequately consider that his income had been reduced as a result of him being on disability leave. The court rejected David's contention that modification of support was warranted, noting that the claimed disability had occurred between November 2019 and April 2020, and further explaining that David had raised the issue of the purported reduction in his income at trial, but had failed to submit evidence to support his claims. The court also noted that even when David filed his request to modify support in March 2020, he failed to provide the court with sufficient evidence from which the court could conclude that the income that should be attributed to him was lower than the amount the court had used to calculate support. As a result, the court did not modify its previous spousal support determination. However, the court did modify the child support determination as a result of its finding that the parties' relative share of custodial time with the children had changed since the prior order. The court calculated David's child support arrears for the period between and including

14

April 2020 and August 2020 to be $17,050.34. The court also set monthly child support at $3,836 going forward.

In October 2020, Alison again sought the court's assistance regarding the sale of the house and other matters. Alison requested that the court (1) sign an income-withholding order, (2) order David to move out of the residence, (3) freeze a particular retirement account, and (4) appoint an elisor to sign various documents to effectuate the sale of the residence. Alison indicated that David had moved into the residence and changed the locks, despite the fact that the court had repeatedly denied his requests to take possession of the residence.

The court granted Alison an income-withholding order, as well as an order freezing certain retirement accounts pending a further hearing. Before the court ruled on the other matters in Alison's ex parte request, David filed his own ex parte request for relief in which he sought an order permitting him to "satisf[y]" any "undertaking required to stay sale of the community residence" by "making a $64,941.24 payment that reinstated the mortgage to good[ ]standing" and taking over the mortgage payments. David also requested an order granting him temporary exclusive use and possession of the residence.

In October 2020, David's second attorney filed a motion to be relieved as counsel, and a third attorney appeared in the matter on David's behalf.

In late October, the court made multiple findings and rulings regarding the sale of the residence. The court determined that the marital residence should be listed for sale at $1.379 million. The court denied Alison's request for appointment of an elisor to sign various documents, and instead reiterated that pursuant to the March 2020 final statement of decision, the "parties are ordered to cooperate in executing all documents necessary to list

15

the property for sale and to facilitate an expeditious sale of the property." The court also denied Alison's request to order David to vacate the marital residence, but did order that David would be responsible for the mortgage payments, payments on a solar loan, outstanding property taxes, homeowner's insurance, and all repairs, maintenance and other expenses associated with the residence. The court denied David's request to consider these items as constituting the undertaking required to stay the order directing the sale of the house. Instead, the court determined that the appropriate amount of an undertaking that fairly represented Alison's interest in the proceeds from the house was $262,958.62. The court informed David that he could not use funds from a community account for purposes of posting the undertaking.

Just over a week later, Alison moved ex parte requesting that the court enter an order specifying that no stay would issue if David posted an undertaking after the parties entered into a sale contract with a buyer. Alison also sought specific orders regarding the listing and showing of the marital residence, including orders requiring David to allow a lockbox to be installed for realtor access, requiring David to make the home available for showings at certain times on weekends and one weekday each week, requiring David to participate in a walk-through with the agent so that he could be informed on how to prepare the home for showings and for David to comply with those instructions, and requiring David to make the home accessible to the listing agent, buyer, and buyer's agent for purposes of inspections and walk-throughs in the event that escrow was opened.

On October 29, 2020, David filed another notice of appeal in which he identified the orders from which he was appealing as those entered on

16

"10/5/20, 10/7/20, 10/15/20, 10/20/20" and "all judgments of Judge Freeland since March 2020" (some capitalization omitted).

In November 2020, the court issued specific orders in response to Alison's request for the court's assistance regarding the listing of the marital residence. The court directed David to sign all documents required to effectuate the sale within certain time frames, ordered that a realtor was permitted to install a lockbox at the residence, directed when and how David would have to make the property available for showings, required David to participate in a walk-through with the realtor and to complete reasonable repair requests made by the realtor, and directed David to vacate the residence as of the close of escrow.

On December 1, 2020, David filed a notice of appeal that appears to consist of a copy of his October 29, 2020 notice of appeal, with the addition of handwritten notes indicating that David was seeking to add to his appeal the trial court's orders from "10/30/20 [and] 11/30/20."

Judge Freeland held a custody review hearing in early December 2020. Based on evidence and information provided at that review hearing, the court found that David had failed to present "sufficient evidence to demonstrate that the therapy that [the eldest minor child] is receiving is sufficient to meet his needs." The court concluded that it was in that child's best interest to give Alison sole legal custody with respect to his medical and mental health care. However the court retained the physical custody arrangement, such that the child would continue to reside primarily with David.

On December 17, 2020, this court dismissed David's notices of appeal, filed on September 28 and October 29, 2020, for procedural deficiencies. Other of David's notices of appeal were also dismissed at various times by this court, but he cured the deficiencies and those appeals were reinstated.

17

He was unable to reinstate the appeals filed on September 28 and October 29, 2020.

In early February 2021, Alison filed an ex parte request for orders regarding the sale of the marital residence and past due child and spousal support. Alison indicated that the realtor with whom she had been working for almost a year had withdrawn as a result of David's refusal to cooperate with the sale, but she explained that she had found a new realtor and a potential buyer who had offered more than the listing price. According to Alison, David was "either refus[ing] to respond" to messages and emails about the sale, or "send[ing] 'cease and desist' messages back." Alison requested that the court order that the amount that David continued to owe to Alison for child and spousal support arrears and attorney fees be paid to her out of David's portion of the proceeds from the sale of the residence.

Before the court could hear Alison's request for those orders, Alison filed for additional ex parte relief from the court, seeking David's "immediate removal" from the residence. In her declaration, Alison indicated that the scheduled escrow closing date was February 25, 2021, and there was no indication that David intended to vacate the marital residence. Instead, David repeatedly indicated to those involved in the sale process that he believed that he would be the one purchasing the residence, and he suggested that his appeal from the order that the residence be sold operated to prevent the sale from being completed.

The following day, Judge Victor M. Torres entered an order requiring all "occupants" of the marital residence to vacate by 5:00 p.m. on the date escrow was set to close. On February 19, 2020, David filed a notice of appeal from this order.

18

In March 2020, Alison filed another ex parte request, this time seeking an order authorizing a sheriff's removal of David from the marital residence. Alison indicated that escrow associated with sale of the marital residence had closed on February 25, 2021, but when the buyers arrived at the property after escrow closed, David had not vacated the residence and instead "greeted [the buyers] by calling them 'sick sick people.' " Alison requested that the court issue an order for a sheriff's removal. The following day, the court granted Alison's requested relief and signed an order directing the county sheriff or any law enforcement agency with jurisdiction to remove David from the residence.

On the same day the court issued its sheriff's removal order, David filed a notice of appeal from that order.

In March 2021, the court proceeded with the hearing on Alison's request for the court to determine support arrears and amounts due to other parties, as well as her request for a final determination as to the disbursement of proceeds from the sale of the marital residence. The court ordered that $285,832.91 of the total proceeds from the sale of the marital residence were to be disbursed to Alison, and $30,984 to David.

On April 15, 2021, David filed a notice of appeal from the trial court's March 2021 order regarding the distribution of the proceeds from the sale of the marital residence.

III.

DISCUSSION

As David himself concedes, this appeal involves virtually the entirety of the litigation between David and Alison that occurred in the wake of Alison's decision to file for dissolution of the parties' marriage. Indeed, as our recitation of the background of this matter reveals, David filed a notice of

19

appeal from almost every ruling entered by the trial court below. We generally understand David to be challenging three broad aspects of the trial court's many rulings in this matter: (1) the court's determinations regarding custody of the minor children, (2) the court's determinations as to child and spousal support, and (3) the court's decision to order that the marital residence be sold, and all of the subsequent orders flowing from that decision, including an order directing David's removal from the residence. In addition, running throughout David's briefing is his contention that Judge Freeland was biased against him. However, David's briefing is difficult to understand and often appears to be based on David's misapprehension of both the legal and factual underpinnings of the court's rulings. In addition, because Alison has not appeared in this appeal, we are left on our own to discern the nature of David's complaints with respect to the issues David ostensibly raises through this appeal. In doing so, we conclude that David's briefing fails to meet basic appellate standards, resulting in the forfeiture of his claims. To the extent that we are able to ascertain certain of David's complaints, we conclude that they are without merit.

A.      *David has forfeited his contentions on appeal by failing to present cogent legal arguments demonstrating reversible error*

Given the character and tone of the assertions set forth in David's briefing, we feel it necessary to begin by stating certain basic rules of practice and procedure that apply in every appeal. On appeal, a reviewing court begins with a fundamental presumption that the trial court's judgment or orders are *correct*. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) It is the burden of the party challenging a judgment or order to affirmatively demonstrate error. (*Bianco v. California Highway Patrol* (1994) 24 Cal.App.4th 1113, 1125.) " 'In so doing, [an appellant] must raise claims of

20

reversible error or other defect [citation], and must "present argument and authority on each point made." ' " (*Conservatorship of Ben C.* (2007) 40 Cal.4th 529, 544, fn. 8; Cal. Rules of Court, rule 8.204(a)(1)(B).) A reviewing court is "not required to examine undeveloped claims or to supply arguments for the litigants." (*Allen v. City of Sacramento* (2015) 234 Cal.App.4th 41, 52; *Paterno v. State of California* (1999) 74 Cal.App.4th 68, 104.) "Nor is an appellate court required to consider alleged error where the appellant merely complains of it without pertinent argument." (*Berger v. Godden* (1985) 163 Cal.App.3d 1113, 1119 (*Berger*).)

An appeal may therefore be deemed forfeited or abandoned where it fails to comply with the essential requirements of an appeal, including the requirement of providing a "*reason* to reverse or even modify the orders in question." (*Conservatorship of Ben C., supra*, 40 Cal.4th at p. 544, fn. 8, italics added; see *Berger, supra*, 163 Cal.App.3d at p. 1120 [deeming appeal abandoned where appellant's brief "simply failed to make any arguments to support any theory of error"].)

We are mindful that David is appearing in propria persona, and that a party who proceeds without the assistance of legal counsel may encounter unique challenges not encountered by those who utilize the services of competent legal counsel. However, the above-cited rules apply equally to self-represented litigants: "A self-represented party is to be treated like any other party and is entitled to the same, but no greater, consideration than other litigants having attorneys." (*Elena S. v. Kroutik* (2016) 247 Cal.App.4th 570, 574; see *Burkes v. Robertson* (2018) 26 Cal.App.5th 334, 344–345 ["The same burdens are imposed uniformly and equally on all appellants, and self-represented parties are ' "held to the same restrictive procedural rules as an attorney." ' "].) Thus, David is not exempt from the

rules governing preparation of an adequate appellate record and presenting legal arguments supported by citations to relevant legal authority and portions of the record.

David's briefing is clear only insofar as it generally communicates David's belief that the trial court erred with respect to virtually all of its rulings. But David's brief fails to set forth cogent legal arguments to demonstrate *the legal basis*, if any, supporting such assertions of error. Because David has failed to set forth cogent legal arguments and cite the record in support of the points made, we conclude that David has forfeited his contentions on appeal. (See, e.g., *In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 830 [absence of cogent legal argument or citation to authority forfeits the contention; "[w]e are not bound to develop appellants' arguments for them"].)[4]

B. *David has not demonstrated error with respect to the court's determination as to custody of the minor children*

Even if we were to decide the merits of David's objections to the trial court's orders, we have not been persuaded that the trial court erred or abused its discretion. We begin with David's complaints regarding the orders touching on custody and visitation with respect to the minor children. Again, David's contentions are ambiguous. What we discern from David's briefing is

---

[4] On February 6, 2023, David filed handwritten documents in this court titled "Motion/Request to Reinstate Montenegro Orders of May 2020 [and] 12/19/19" (some capitalization omitted) and "Request/Motion to Stop Garnishment of Wages and Follow Our Stipulated Agreement Between Parties" (some capitalization omitted). In these documents, David merely repeats many of the same assertions and requests made in his briefing on appeal. Given that these documents do not request anything new or different from what David seeks through his appeals from the various orders issued in this case, we deny the motions.

that he believes the court erred in at least two respects with regard to custody—(1) its failure to make a finding that Alison committed domestic violence against him, which would have triggered application of the Family Code section 3044 presumption against awarding custody to an individual who has committed domestic violence, and (2) its decision to modify at a later point in time the final custody order that had been issued, after a six-day trial, on December 19, 2019 (i.e., the custody order that David refers to as "the Montenegro orders," an apparent reference to *Montenegro v. Diaz* (2001) 26 Cal.4th 249, 255).

With respect to the first issue, David appears to suggest that because he testified that Alison had abused him, the court necessarily should have concluded that Alison did so. Although David continues to repeat in his appellate briefing his claims that Alison committed domestic violence against him, the record demonstrates that the court considered David's contentions about domestic violence and rejected them. " ' "[I]t is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts on which that determination depends." ' " (*People v. Smith* (2005) 37 Cal.4th 733, 738–739.) The trial court here did not fully believe David's version of various events, and it is not this court's function to second-guess the trial court's determinations of witness credibility. (*In re A.S.* (2018) 28 Cal.App.5th 131, 149; see, e.g., *In re Sheila B.* (1993) 19 Cal.App.4th 187, 199 ["We review a cold record and, unlike a trial court, have no opportunity to observe the appearance and demeanor of the witnesses."].) We therefore reject David's assertion that the trial court should have granted him full custody of all three minor children based on his claims that Alison committed domestic violence against him.

We also conclude that David's repeated complaints regarding the trial court's decision to modify the final custody order are without merit. David does not explain the basis for his contention that the trial court's March 10, 2020 order modifying the final custody order was "unjust[ ]," and we see no error in the trial court's handling of the matter. The trial court recognized that the December 19, 2019 custody order was a final order, and further correctly recognized that because of the finality of the December 19, 2019 custody order, any party seeking to modify that order would have to demonstrate the existence of changed circumstances before the court could even consider ordering a modified custody arrangement. (See, e.g., *In re Marriage of Brown & Yana* (2006) 37 Cal.4th 947, 956.) The trial court made findings about the existence of at least two changed circumstances that warranted a revisiting of the final custody order. The first significant changed circumstance involved the parties' eldest minor child, who had been living primarily with David pursuant to the December 19, 2019 order, and who had been involuntarily disenrolled from his school because of his lack of attendance and who was not getting the level or consistency of therapy that his counselor had indicated was necessary. The second significant changed circumstance involved the two youngest children, who were living primarily with Alison and had been participating in therapy since the final order. The youngest children's therapist had indicated that the children had "expressed their discomfort" at being in David's custody and were "dissatisfied" with the increased time that David had been granted in the final custody order; the therapist also indicated that the level of emotional "upset" caused to the children as a result of being in David's care was "preventing them from focusing on school and [preventing them] from healing."

24

David has not attempted to challenge the sufficiency of the evidence to support the trial court's conclusion that these changed circumstances existed. Nor has David attempted to demonstrate why the court's ultimate custody orders, made in the face of these changed circumstances, were an abuse of the court's discretion. The trial court, focusing on the eldest minor child's state of mind, and recognizing that this child would be facing "changing academic environments and beginning a new therapeutic regime," determined that a change in primary custody from David to Alison would be too detrimental, overall, and the court therefore retained the custody order as to that child. However, with respect to the two youngest children, the court concluded that retaining the original custody order, but not giving effect to the step-up in custody envisioned by the December 19, 2019 final custody order, was the appropriate course of action. We see no abuse of the court's discretion in its decision that this modification was appropriate, given the information it had obtained about the children's mental health. We therefore reject David's contention that the trial court's decision not to move forward with the plan to give him increased custody time with the two youngest children, as envisioned in the December 19, 2019 final custody order, was somehow "unjust." Rather, the court focused on the needs of the children, as it was required to do.

C.  *David has demonstrated no basis for reversing the court's orders regarding child or spousal support*

Again, David's contentions with respect to the court's orders regarding child and spousal support are ambiguous, at best. However, it appears that David believes the trial court erred in setting both child and spousal support in two ways. First, David appears to believe that he and Alison "had a stipulation for child support and spousal support," and that the court "should

not have usurped the stipulated agreement without the consent of the parties in writing." Second, David appears to contend that the court failed to consider the fact that he had a lower income while he was "on disability," and that therefore the court should have ordered lower amount for child and spousal support than the court ultimately ordered.

First, with respect to David's reference to a stipulated agreement between the parties, what David apparently fails to appreciate is that the February 2018 stipulation between the parties was an agreement as to the *temporary* child and spousal support numbers that were to be in place until the trial court was able to hold an evidentiary hearing with respect to the parties' financial matters. Indeed, the parties' agreement envisioned further action by the court—it stated that David would pay Alison $5,714 for child support and $4,526 for spousal support, "until further agreement of [the] parties *or court order*." Further, the stipulated agreement specified that there would be a "[r]eview hearing scheduled for June 7 at 1:45 pm," for which "[u]pdated Inc. & Expense declarations [are to be] exchanged 2 weeks prior (May 24, 2018)." Obviously, there would be no need to exchange updated financial information if there was no expectation that the court would be considering these issues. Nothing in the stipulation indicated that the parties intended it to be their final agreement with respect to any of the issues, let alone the final agreement as to child and spousal support. Indeed, the parties proceeded to a two-day trial on all of the property and financial matters, including child and spousal support. David participated fully in this trial, suggesting that he was aware that these issues had not been fully determined by agreement of the parties. David's argument in this regard is therefore without merit.

26

We also reject David's suggestion that the trial court erred with respect to assessing David's income for child and spousal support purposes by failing to account for his reduced income while he was "on disability." With respect to this issue, David again misapprehends the record. David proceeds as if the trial court simply ignored evidence that David's income had been reduced as a result of a decrease in his working hours attributable to "disability." However, the record demonstrates that the court concluded that David had failed to provide sufficient evidence from which the court could adequately assess David's contention that his income was necessarily reduced as a result of David being on disability leave. Specifically, the trial court noted that David presented no evidence of: (1) a physician's certification of the need for a disability leave of absence, (2) the scope/limitations resulting from the alleged disability, (3) the anticipated duration of any such leave, (4) income received following the commencement of either the FMLA leave or the disability leave (to the extent that there was not complete overlap), or (5) documentation reflecting how long said income was expected to continue. The court concluded: "Consequently, the Court was not presented with sufficient evidence to warrant a finding that David's income is different than it was as represented in the Income and Expense Declaration that he filed on November 4, 2019."

David has not pointed to any portion of the trial court's recitation of its factual understanding that is incorrect or unsupported by the evidence, nor has he cited to pages in the record where he submitted sufficient evidence regarding any of the items the trial court identified as being necessary for it to make an assessment that his diminished income was, truly, involuntary and the time frame during which any diminution in his income might have been in effect. Without such evidence, the court appropriately determined

27

that it could not make a finding that David's income should be calculated to be something different than the amount reflected in David's November 4, 2019 Income and Expense Declaration, plus the addition of the rental income that had not been disclosed in that document.

In sum, David has not demonstrated any abuse of discretion in the trial court's setting of the child support and spousal support amounts ordered in this case. (See *In re Marriage of Hein* (2020) 52 Cal.App.5th 519, 529 [award of child support reviewed for abuse of discretion; *In re Marriage of Ciprari* (2019) 32 Cal.App.5th 83, 104, 108 [temporary and permanent spousal support orders are reviewed for abuse of discretion].)

D. *David's contentions regarding the marital residence have been rendered moot by the sale of the property to third party purchasers*

One of David's main contentions throughout the trial court proceedings and in his briefing on appeal is that the trial court should not have ordered the marital residence be sold and it should not have ordered him removed from the residence. We conclude that these issues have been rendered moot by the fact that the property has already been sold.

"It is well settled that an appellate court will decide only actual controversies and that a live appeal may be rendered moot by events occurring after the notice of appeal was filed." (*Daily Journal Corp. v. County of Los Angeles* (2009) 172 Cal.App.4th 1550, 1557.) "A case is moot when any ruling by this court can have no practical impact or provide the parties effectual relief." (*Woodward Park Homeowners Assn. v. Garreks, Inc.* (2000) 77 Cal.App.4th 880, 888.)

The record includes evidence of the fact that the sale of the marital home to third party purchasers was completed as of February 25, 2021.[5] When a litigant appeals from an order directing the sale of real property, the intervening sale of the property renders the appeal moot because the court is unable to provide effective relief. (*First Federal Bank of California v. Fegen* (2005) 131 Cal.App.4th 798, 800–801.) Because this court has no ability to provide David with effective relief from the trial court's order directing the sale of the residence, or any of its subsequent orders issued to effectuate the sale order, this aspect of David's appeal is moot and we decline to address David's challenges regarding the sale of the marital home and his removal from the home on their merits.

E.     *David's claims of bias on the part of Judge Freeland are without merit*

Finally, we address David's repeated accusations that Judge Freeland acted out of a bias against him and treated him inequitably. We disagree with David's reading of the record and the accusations of bias against a judicial officer he draws from this record. We note that the mere fact that a trial judge makes numerous rulings against a party, even if some of those rulings are ultimately determined to have been erroneous, is insufficient to establish even the appearance of bias. (See, e.g., *Brown v. American Bicycle Group, LLC* (2014) 224 Cal.App.4th 665, 674 ["[t]he mere fact that the trial

---

[5]     David was informed multiple times throughout the underlying litigation that his appeal from the court's order directing the sale of the marital residence did not operate to stay the order. (See Code Civ. Proc., § 917.4 [no automatic stay of order directing sale of property without undertaking].) The trial court set an amount for an undertaking to stay the sale, but David never posted it. As a result, the trial court never issued a stay of the order directing the sale, and sale of the property moved forward. David requested that this court issue a stay of all proceedings in the trial court pending resolution of his appeal, but his request was denied.

court issued rulings adverse to [one party] on several matters in this case, even assuming one or more of those rulings were erroneous, does not indicate an appearance of bias, much less demonstrate actual bias"].)

We recognize that David disagreed with and was upset by many of Judge Freeland's rulings. However, that does not mean that Judge Freeland treated him inequitably or operated out of bias. Rather, Judge Freeland did what she was tasked with doing by virtue of her role as the judicial officer overseeing much of the parties' litigation—i.e., she formed opinions and made credibility determinations based on the evidence before her. "When making a ruling, a judge interprets the evidence, weighs credibility, and makes findings. In doing so, the judge necessarily makes and expresses determinations in favor of and against parties. How could it be otherwise?" (*Moulton Niguel Water Dist. v. Colombo* (2003) 111 Cal.App.4th 1210, 1219.) Our review of this record discloses no support for David's contentions of bias on the part of Judge Freeland. Rather, all of the judicial officers who made rulings in this case appeared to have properly focused on the evidence presented and made determinations based on the relevant legal standards applicable to the questions raised by the parties' requests. We therefore reject David's assertion that Judge Freeland was biased against him.

IV.

DISPOSITION

The orders of the trial court encompassed by the pending notices of appeal filed under case No. D077308 are affirmed.


BUCHANAN, J.

WE CONCUR:


HUFFMAN, Acting P. J.


DATO, J.