Filed 3/11/14

CERTIFIED FOR PARTIAL PUBLICATION*

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| SHELLEY BROWN, | D063268 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. Nos. 37-2010-0008326-CU-PO-NC) |
| AMERICAN BICYCLE GROUP, LLC, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of San Diego County, Robert P. Dahlquist, Judge. Affirmed.

Richard L. Duquette and Richard James Schnieders for Plaintiff and Appellant.

G & P Schick, Malcolm M. Schick and Danielle C. Loss for Defendant and Respondent.

---

* Pursuant to California Rules of Court, rule 8.1110, this opinion is certified for publication with the exception of parts III.C. and III.D.

I.

INTRODUCTION

Appellant Shelley Brown was injured in a bicycle accident involving her riding partner, Ronald Voigt. Voigt was riding in front of Brown when the front fork on Voigt's bicycle failed. Voigt fell, and caused Brown, who was unable to avoid Voigt, to crash as well. Brown sued the designer and distributor of the bicycle fork, American Bicycle Group, LLC (ABG), among others. A jury returned a verdict in favor of ABG. The trial court denied Brown's motion for new trial, and Brown filed this appeal.

In the published portions of this opinion, we consider Brown's contentions that the trial judge erred in failing to disclose his "significant financial ties with the insurance industry," and that her due process right to an impartial judge was violated. We conclude that the trial judge was not required to disclose his ownership interests in various insurance related companies, since none of those companies was a party to this case or a carrier of ABG's.[1] We further conclude that there was no violation of Brown's due process right to an impartial judge.

In the unpublished portion of this opinion, we consider Brown's contention that the trial court committed reversible error in denying three of her in limine motions to exclude various items of evidence at trial. We conclude that Brown's motions in limine were not sufficient to preserve her evidentiary objections, and that Brown has not demonstrated that she was prejudiced by the trial court's rulings. We also conclude that Brown's claims

---

[1] We also conclude that this claim is procedurally barred for several reasons.

2

as to two of the three in limine motions fail because the record on appeal does not establish that any of the evidence at issue in the in limine motions was offered at trial. As to the third in limine motion, we reject Brown's claim on the merits and conclude that the trial court did not abuse its discretion in denying the motion.

In another unpublished portion of this opinion, we consider Brown's contention that the trial court erred in denying her motion for new trial. However, Brown does not present any argument for reversing the trial court's order denying the motion, apart from attempting to improperly incorporate her trial court pleadings into her briefing on appeal. Since it is well established both that documents filed in the trial court may not be incorporated by reference into an appellate brief, and that this court need not consider such improperly incorporated arguments, we deem this contention forfeited.

Accordingly, we affirm the judgment and the trial court's order denying Brown's motion for new trial.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND[2]

Brown suffered multiple injuries in the bicycle accident described in part I., *ante*.

In December 2011, Brown filed a first amended complaint against ABG, among others. Brown alleged that the front fork on Voigt's bicycle was defective and that ABG

---

[2]    The record on appeal contains only a partial reporter's transcript, which includes only a single witness's trial testimony. We base our factual and procedural background on the available record.

had designed and distributed the fork. Brown brought claims against ABG for strict products liability, negligence, and breach of warranty.

Prior to the trial, Brown filed in limine motions to exclude evidence pertaining to Voigt's alleged negligent maintenance of the bicycle, the lack of similar accidents involving the bicycle fork, and expert testimony to the effect that a foreign object may have struck Voigt's bicycle fork. The trial court denied Brown's motions.

In October 2012, a jury returned a special verdict in favor of ABG. The jury found that the bicycle fork in question contained a manufacturing defect, but that the defect was not a substantial factor in causing Brown to suffer harm. The trial court subsequently entered judgment in favor of ABG pursuant to the jury's special verdict.

In November 2012, Brown filed a motion for new trial. The following month, the trial court entered an order denying the motion.

Brown timely appealed from the judgment.[3]

III.

DISCUSSION

A.  *The trial judge was not required to disclose his ownership interests in various companies*

Brown contends that the trial judge erred in not disclosing his ownership interests in various companies, and that she would have filed a peremptory challenge to the trial

_____

[3]     "An order denying a motion for a new trial is not directly appealable, but is reviewable on appeal from the underlying judgment." (*Chakalis v. Elevator Solutions, Inc.* (2012) 205 Cal.App.4th 1557, 1568, fn. 4.)

4

judge pursuant to Code of Civil Procedure[4] section 170.6 if the judge had made the disclosures. Brown's theory appears to be that the trial judge's ownership interests in companies related to the insurance industry evinces a bias on the judge's part in favor of ABG because ABG was insured, and any potential judgment against ABG would be paid by an insurance company. Brown also contends that the trial judge violated her right to due process by failing to disqualify himself from presiding over the case, in light of his bias.

1.      *Procedural background*

In her motion for new trial, Brown contended that the trial court displayed prejudice toward her and her counsel throughout the trial proceedings. In support of this contention, Brown cited numerous rulings that she contended were legally erroneous. Brown also claimed that the trial judge had been "smiling and looking over to [ABG's] counsel during his favorable defense rulings," and that the trial judge "snarled at [Brown's] counsel" when her counsel attempted to provide the trial judge with a list of anticipated witnesses before court one morning during the trial.

In support of her motion for new trial, Brown lodged numerous exhibits, including copies of the trial judge's Fair Political Practice Commission's Statement of Economic

---

4      Further statutory references are to the Code of Civil Procedure unless otherwise specified.

Interests for the year 2011.[5]  On the disclosure forms, the trial judge indicated the fair

market value of his ownership interests in numerous companies, including the following:

| | |
|---|---|
| 1. Berkshire Hathaway | $100,001 - $1,000,000 |
| 2. RLI Corporation | $10,001 - $100,000 |
| 3. State Street Corporation | $10,001 - $100,000 |
| 4. Leucadia National Corporation | $10,001 - $100,000[6] |

Brown made no argument concerning the relevance of these disclosure forms in

her briefing in support of her motion for new trial.

2.      *Governing law*

a.      *Grounds for the disqualification of a trial judge*

Section 170.1 specifies the grounds on which a trial judge may be disqualified

from a case for cause.  The statute provides in relevant part:

"(a) A judge shall be disqualified if any one or more of the following
are true:

"[¶] . . . .[¶]

"(3)(A) The judge has a financial interest[7] in the subject matter in
a proceeding or in a party to the proceeding.

---

[5]      Government Code section 87200 mandates that state trial judges file such forms.

[6]      In her brief on appeal, Brown characterizes these entities as "insurance companies."  We assume, for the sake of this opinion, that these companies are all related in some way to the insurance industry.

[7]      Section 170.5 provides in relevant part:
"For the purposes of Sections 170 to 170.5, inclusive, the following definitions apply:

"[¶] . . . .[¶]

"(b) 'Financial interest' means ownership of more than a 1 percent legal or equitable interest in a party, or a legal or equitable interest in

6

"[¶] . . . .[¶]

"(6)(A) For any reason:

"[¶] . . . .[¶]

"(iii) A person aware of the facts might reasonably entertain a doubt
that the judge would be able to be impartial."

Unlike disqualification for cause, "Section 170.6 permits a party to obtain the disqualification of a judge for prejudice, upon a sworn statement, without being required to establish it as a fact to the satisfaction of a judicial body." (*Barrett v. Superior Court* (1999) 77 Cal.App.4th 1, 4.) "Where a disqualification motion is timely filed and in proper form, the trial court is bound to accept it without further inquiry." (*Ibid.*) Disqualification motions made pursuant to section 170.6. are commonly referred to as peremptory challenges. (See, e.g., *National Football League v. Fireman's Fund Ins. Co.* (2013) 216 Cal.App.4th 902, 914.)

        b.     *A trial judge's duty to disclose information relevant to the issue of disqualification*

At the time of the trial court proceedings in this case, former Canon 3E(2) of the California Code of Judicial Ethics (Canon 3E(2)) provided:

"In all trial court proceedings, a judge shall disclose on the record information that is reasonably relevant to the question of

---

a party of a fair market value in excess of one thousand five hundred dollars ($1,500), or a relationship as director, advisor or other active participant in the affairs of a party, except as follows:

"(1) Ownership in a mutual or common investment fund that holds securities is not a 'financial interest' in those securities unless the judge participates in the management of the fund."

7

disqualification under Code of Civil Procedure section 170.1, even if the judge believes there is no actual basis for disqualification."[8]

> c. *A writ of mandate is the exclusive method by which to challenge a ruling concerning the disqualification of a judge*

Section 170.3, subdivision (d) provides in relevant part:

> "The determination of the question of the disqualification of a judge . . . may be reviewed only by a writ of mandate from the appropriate court of appeal sought within 10 days of notice to the parties of the decision and only by the parties to the proceeding."

In *People v. Panah* (2005) 35 Cal.4th 395, 444 (*Panah*), the Supreme Court reiterated that section 170.3, subdivision (d) provides the only method by which a party may seek appellate review of the disqualification of a judge: "As we have repeatedly held, the statute means what it says: Code of Civil Procedure section 170.3, subdivision (d) provides the exclusive means for seeking review of a ruling on a challenge to a judge, whether the challenge is for cause or peremptory." The Supreme Court has also expressly *rejected* the claim that a disqualification ruling is reviewable on appeal from a subsequent judgment. (*People v. Williams* (1997) 16 Cal.4th 635, 652 ["statutory judicial disqualification claim is not properly before us on this automatic appeal following a

---

[8]  Canon 3E(2) has since been amended to state in relevant part:
  "In all trial court proceedings, a judge shall disclose on the record as follows:

  "(a) Information relevant to disqualification

  "A judge shall disclose information that is reasonably relevant to the question of disqualification under Code of Civil Procedure section 170.1, even if the judge believes there is no actual basis for disqualification."

8

judgment of death"]; *People v. Brown* (1993) 6 Cal.4th 322, 333 ["section 170.3 [, subdivision] (d) creates an exception to the general rule that interlocutory rulings are reviewable on appeal from a final judgment"].)

    3.    *Application*

Brown claims that the judgment and order denying her motion for new trial should be reversed because if she had been aware of "Judge Dahlquist's clear pro-insurance bias," "Brown's Counsel would have filed a Code of Civil Procedure section 170.6 challenge . . . ." Brown's claim fails for several reasons.

As an initial matter, Brown's claim is not cognizable on appeal because a petition for writ of mandate is the exclusive method by which a party may seek review of the question of the disqualification of a judge. (§ 170.3, subd. (d).)

Further, Brown forfeited any appellate contention that the trial judge's ownership interests in various insurance companies mandated either disclosure or disqualification. " 'If a judge refuses or fails to disqualify [himself], a party may seek the judge's disqualification. The party must do so, however, "at the earliest practicable opportunity after discovery of the facts constituting the ground for disqualification." [Citation.]' " (*People v. Guerra* (2006) 37 Cal.4th 1067, 1111.) Although Brown lodged the disclosure forms reflecting the judge's ownership interest in numerous companies in the trial court in her motion for new trial, Brown failed to seek disqualification in the trial court on this ground or to present any argument as to the relevance of the forms at any point in the trial

proceedings.[9]  Thus, Brown has forfeited any claim premised on the disclosure forms. (See *ibid*.)

Further, we are aware of no authority, and Brown has cited none, that supports the proposition that a trial judge is required to make disclosures under Canon 3(E)(2) in order to enable a party to file a peremptory challenge *under section 170.6*.  Both former and current Canon 3E(2) require a trial court to disclose information that is "reasonably relevant to the question of disqualification under *Code of Civil Procedure section 170.1*." (Italics added.)  Section 170.1 relates to disqualification *for cause*.  Brown's claim that the trial judge failed to disclose adequate information to allow her to exercise a *peremptory challenge* pursuant to section 170.6 is therefore without merit.[10]

Finally, since Brown does not allege that any of the companies in which the trial judge held an ownership interest was a party to this case or a carrier of ABG's, we conclude that the trial judge had no duty to disclose these interests, and that the trial court was not disqualified to preside over this case in light of such interests.  (See § 170.1, subd. (a)(6)(iii) [trial judge disqualified only if "[a] person aware of the facts might

---

[9]     In her notice of lodgment, Brown stated that the disclosure forms indicated that the trial judge held ownership interests in a total of 15 companies.  The notice did not highlight the four insurance related companies that Brown argues on appeal mandated disclosure and disqualification.

[10]     In the introduction portion of her brief, Brown suggests that disclosure was required in order to permit her to file a motion to disqualify the trial judge for cause pursuant to section 170.1.  We reject this argument in light of the other reasons that we provide in the text for rejecting Brown's claim that disclosure was required in order to permit Brown to file a peremptory challenge to disqualify the trial judge pursuant to section 170.6.

*reasonably* entertain a doubt that the judge would be able to be impartial," italics added];

cf. *Haas v. County of San Bernardino* (2002) 27 Cal.4th 1017, 1031 ["the high court has

required disqualification only for financial interests that it has characterized as ' " 'direct,

personal, substantial, [and] pecuniary' " ' rather than 'slight.' [Citation.]"].)[11]

B.      *There was no violation of Brown's due process right to an impartial judge*

        Brown also claims that her due process right to an impartial judge was violated.

        1.      *A party's due process right to an impartial judge*

        "[N]otwithstanding the exclusive-remedy provision of Code of Civil Procedure

section 170.3, 'a [party] may assert on appeal a claim of denial of the due process right to

an impartial judge.' [Citation.]"  (*Panah, supra,* 35 Cal.4th at p. 445, fn. 16.) "The Due

Process Clause entitles a person to an impartial and disinterested tribunal in both civil and

criminal cases."  (*Marshall v. Jerrico, Inc.* (1980) 446 U.S. 238, 242.)

        2.      *The record does not demonstrate that the trial court was biased*

        Brown claims that the trial judge was biased for several reasons.  First, Brown

argues that the trial judge's failure to "disclose his biases" through disclosure of his

ownership interests in the insurance related companies violated her right to due process.

We reject this argument for the reasons stated in part III.A, *ante*.  Second, Brown

contends that the trial judge made several erroneous legal rulings.  The mere fact that the

trial court issued rulings adverse to Brown on several matters in this case, even assuming

---

[11]     Brown does not claim that the trial judge was required to disclose such interests
because he had "a financial interest in the subject matter in a proceeding or in a party to
the proceeding." (§ 170.1, subd. (a)(3)(A).)

11

one or more of those rulings were erroneous, does not indicate an appearance of bias, much less demonstrate actual bias. (See *Blakemore v. Superior Court* (2005) 129 Cal.App.4th 36, 59-60 (*Blakemore*) ["While we conclude the court erred in several respects, the leap from erroneous rulings to the appearance of bias is one we decline to make"].) Finally, Brown contends that the trial judge exhibited "personal bias" toward her by denying an in limine motion to exclude evidence concerning her son's counseling records,[12] denying her motion for new trial without holding oral argument, failing to ensure that the judge's financial disclosure forms would be preserved in the record,[13] denying her request for a recess at trial after an emergency 911 tape describing the accident was played, and allowing the judge's research attorney to make "false and disparaging comments to Brown's staff."[14] We are not persuaded.

---

[12] In opposing the motion in limine, ABG argued, "ABG has no intention of introducing evidence relating to any psychological treatment. However to the extent that Mr. Brown's behavior contributed to Brown's mental and emotional symptoms that she has tendered at issue in this case, even if prior to the accident, the cause of these symptoms is relevant." Brown does not contend that evidence pertaining to her son's counseling records was offered at trial.

[13] In her appellate brief, Brown asserts that this court granted Brown permission to lodge the disclosure forms as exhibits. The forms have been lodged with this court, and ABG has raised no objection to their inclusion as a part of the record on appeal.

[14] In her motion for a new trial, Brown stated that the trial judge's research attorney had a telephone conversation with Brown's counsel's office manager. According to Brown, during this call, the research attorney refused to give Brown's counsel her private telephone number and stated," '[Brown's counsel] is always trying to e-mail and fax' and 'if you give [Brown's counsel] an inch, he'll take a mile.' " In addition, Brown stated that, in court one day, the research attorney "sarcastically asked [Brown's counsel] (off the record) about the court's published tentative ruling against [Brown] . . . 'So how did you like my tentative decision?' " Brown supported her motion for new trial with declarations

The trial judge's adverse legal rulings and denial of a request for a continuance do not reflect personal bias. (See *Blakemore, supra,* 129 Cal.App.4th at pp. 59-60.)[15] Any failure by the trial court to preserve the financial disclosure forms reflects, at most, a minor administrative error, from which Brown suffered no prejudice in light of the fact that Brown was able to lodge the forms with this court. Finally, even assuming the veracity of the allegation concerning the statements attributed to the trial judge's research attorney, none of those statements demonstrates that the judge was biased. Accordingly, we reject Brown's claim that her due process right to an impartial judge was violated.

C.     *The trial court did not commit reversible error in denying several of Brown's motions in limine to exclude various items of evidence from admission at trial*

Brown contends that the trial court erred in denying three of her in limine motions to exclude certain evidence at trial. Specifically, Brown contends that the trial court erred in denying her motions to exclude evidence pertaining to: 1) Voigt's alleged negligent maintenance of the bicycle; 2) the lack of similar accidents involving the type of bicycle fork at issue in this case; and 3) expert testimony concerning the possibility that a foreign object struck Voigt's bicycle fork.

---

from her counsel and her counsel's office manager in which each declared "I have reviewed the comments attributed to me in [Brown's] argument and they are true and correct."

[15]     With respect to the trial court's not holding oral argument on Brown's motion for new trial, Brown does not claim that she requested oral argument or that the trial court was required to grant such a request.

1.	*Governing law*

	a.	The *preservation of an evidentiary objection in the trial court*

Evidence Code section 353 provides in relevant part:

> "A verdict or finding shall not be set aside, nor shall the judgment or decision based thereon be reversed, by reason of the erroneous admission of evidence unless:
>
> "(a) There appears of record an objection to or a motion to exclude or to strike the evidence that was timely made and so stated as to make clear the specific ground of the objection or motion . . . ."

"The general rule is that 'when an *in limine* ruling that evidence is admissible has been made, the party seeking exclusion must object at such time as the evidence is actually offered to preserve the issue for appeal' [citation], although a sufficiently definite and express ruling on a motion in limine may also serve to preserve a claim [citation]." (*People v. Brown* (2003) 31 Cal.4th 518, 547.)

In *People v. Morris* (1991) 53 Cal.3d 152, 190-191 (*Morris*), the Supreme Court outlined the circumstances under which a motion in limine will sufficiently preserve an evidentiary objection for appeal:

> "[W]e hold that a motion *in limine* to exclude evidence is a sufficient manifestation of objection to protect the record on appeal when it satisfies the basic requirements of Evidence Code section 353, i.e.: (1) a specific legal ground for exclusion is advanced and subsequently raised on appeal; (2) the motion is directed to a particular, identifiable body of evidence; and (3) the motion is made at a time before or during trial when the trial judge can determine the evidentiary question in its appropriate context.  When such a motion is made and denied, the issue is preserved for appeal.  On the other hand, if a motion *in limine* does not satisfy each of these requirements, a proper objection satisfying Evidence Code section 353 must be made to preserve the evidentiary issue for appeal.

14

"[¶] . . . [¶]

"Notwithstanding our holding, the better practice in handling motions *in limine* is undoubtedly for the parties to stipulate to the effect of the court's rulings . . . or for the trial judge to make it clear to counsel at the end of *in limine* arguments not only what the ruling on the motion is, but whether further objection or argument is desired when the evidence is presented.  If this is done, the stipulation or order of the trial court will be respected in the appellate court's determination whether error has been properly preserved."

b.      *The demonstration of prejudicial error on appeal*

Article VI, section 13 of the California Constitution provides:  "No judgment shall be set aside, or new trial granted, in any cause, on the ground of misdirection of the jury, or of the *improper admission* or rejection *of evidence*, or for any error as to any matter of pleading, or for any error as to any matter of procedure, unless, *after an examination of the entire cause, including the evidence*, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice."  (Italics added.)

Similarly, Evidence Code section 353 precludes reversal of a judgment unless, "[t]he court which passes upon the effect of the error or errors is of the opinion . . . that the error or errors complained of resulted in a miscarriage of justice."

"We can reverse a judgment based on the erroneous admission of evidence only if it is reasonably probable that the appellant would have obtained a more favorable result absent the error, so the error resulted in a miscarriage of justice." (*Faigin v. Signature Group Holdings, Inc.* (2012) 211 Cal.App.4th 726, 748.)  " 'In civil cases, a miscarriage of justice should be declared only when the reviewing court, *after an examination of the entire cause, including the evidence*, is of the opinion that it is reasonably probable that a

15

result more favorable to the appealing party would have been reached in the absence of the error.' [Citation.]" (*Casella v. SouthWest Dealer Services, Inc.* (2007) 157 Cal.App.4th 1127, 1146, italics altered.)  "The burden is on . . . appellant . . . to show that error has resulted in a miscarriage of justice." (*Boeken v. Philip Morris, Inc.* (2005) 127 Cal.App.4th 1640, 1678.)

2.    *Brown did not properly preserve her evidentiary claims in the trial court and has not demonstrated prejudice on appeal*

Brown seeks reversal of the judgment on the ground that the trial court improperly denied three in limine motions to exclude certain evidence at trial.  Brown's claims fail for two fundamental reasons.

First, with respect to all three motions, the trial court expressly stated that its rulings were "not final" and that they could be "revisited at any time during the course of the trial."  The trial court repeatedly emphasized the tentative nature of its rulings on these motions throughout the two hearings at which the court addressed Brown's in limine motions.  For example, at one point, the trial court said, "So, just so we're clear on motions in limine, my denying the motion in limine does not mean I'm admitting anything into evidence.  All it means is I'm not right now excluding it."  At another point, the court stated, "If at any time any party believes that we should revisit any of these rulings, please let me know and we'll do that."[16]

---

16    Indeed, in her reply brief in support of her motion for new trial, Brown stated, "Even though the Court denied these motions [in limine] without prejudice, the fact that the Court would force Plaintiff to re-litigate each threshold issue in contravention of the law was troubling."  Brown also stated, "[Brown] and her counsel understood that she

16

Brown does not contend on appeal that she raised any objections at trial to the evidence that she contends should have been excluded. Under these circumstances, we must "respect[]" (*Morris, supra*, 53 Cal.3d at p. 190) the trial court's order that its rulings on Brown's in limine motions were not final rulings allowing the admission of the evidence in question, and conclude that Brown's in limine motions did not preserve the evidentiary objections that she advances on appeal. (See *ibid*. [trial court's ruling on the nature of its ruling on a motion in limine "will be respected in the appellate court's determination whether error has been properly preserved"].)

Second, the *only* portion of the trial transcript that Brown has designated on appeal is the testimony of engineering consultant David Mitchell. Thus, even assuming that the trial court erred in denying Brown's motions in limine,[17] we are unable to examine "the entire cause, including the evidence," as is constitutionally required before we may reverse a judgment based upon the "improper admission or rejection of evidence." (Cal. Const. art. VI, § 13.) Under these circumstances, Brown has failed to demonstrate that the trial court committed reversible error. (See *Ballard v. Uribe* (1986) 41 Cal.3d 564, 574 ["Finally, and most significantly, plaintiff has failed to include either a transcript or a settled statement of the portion of the trial relating to the issue of damages. In the absence of such a record, we have no way of ascertaining whether it is reasonably

---

would be forced by this Court to re-litigate each issue of law raised in her motions in limine during trial . . . ."

[17] We emphasize that we do not conclude that the trial court committed any such error.

17

probable that either the alleged juror misconduct or the instructional error affected the damages awarded in this case"].)

    3.    *The trial court did not abuse its discretion in denying Brown's motion in limine to exclude expert testimony concerning the possibility that a foreign object struck Voigt's bicycle fork*

Even if Brown's evidentiary claims did not fail for the reasons stated above, we conclude that the trial court did not err in denying Brown's in limine motion to exclude expert testimony concerning the possibility that a foreign object struck Voigt's bicycle fork.[18] We review the trial court's denial of Brown's motion pursuant to the abuse of discretion standard of review.[19] (See, e.g., *McCoy v. Pacific Maritime Assn.* (2013) 216 Cal.App.4th 283, 295 ["We review a trial court's ruling on a motion in limine to exclude evidence for an abuse of discretion"].)

    a.    *Procedural background*

In an in limine motion, Brown sought to preclude Mitchell from testifying that, in his opinion, a foreign object became lodged in Voigt's front wheel spokes, struck the front fork, and caused the left blade of the fork to fail. Brown argued that the record was "devoid of any evidence that a foreign object became lodged," and that "any such

---

[18]    With respect to the trial court's denial of Brown's motions in limine to exclude evidence of Voight's alleged negligent maintenance and the lack of prior accidents and recalls regarding the subject forks, these claims fail for the additional reason that the record on appeal does not contain a reporter's transcript demonstrating that any such evidence was offered at trial.

[19]    We accordingly reject Brown's contention that the trial court's denial of her motion in limine raises an "issue[] of law subject to de novo review."

testimony would be pure speculation." Brown also argued that Mitchell's testimony

should be excluded because he "performed no scientific testing of Mr. Voigt's fork."

In its opposition, ABG argued that Mitchell had articulated his theory that a

foreign object had contributed to the fracture of Voigt's bicycle fork during his

deposition. ABG further argued that Mitchell's anticipated testimony was not premised

on speculation and noted that Mitchell stated during his deposition that he had personally

examined Voigt's bicycle and that physical evidence that he observed on the fork and the

wheel spokes supported his theory. ABG lodged the relevant portions of Mitchell's

deposition in support of its opposition. In the deposition, Mitchell stated:

> "I believe that the fork was compromised by the entrapment of a
> foreign object into the rotating spoke pattern that delivered
> effectively a karate chop to the rear of the fork compromising its
> integrity and leading to a rapid accumulation of additional damage
> and a pattern of damage that led to an eventual sudden catastrophic
> fracture of the entire fork."

During Mitchell's deposition, Brown's counsel asked him, "And what damage did

you see caused by this foreign object?" Mitchell replied: "The trailing or rearward edge

of the left side fork blade shows a blow applied to it from the rear consistent with the

direction of the front wheel."

Mitchell also stated that he saw damage to "a left side spoke," consistent with his

theory. Mitchell explained, "It's actually abrasions at the juncture of the spoke and spoke

nipple at the same elevation as the damage inflicted on the fork." Mitchell further stated,

"[T]here's a mutual consistency between the shape of the damage to the trailing edge of

19

the left fork blade and the pattern of that damage as would be produced by a foreign object in the spokes."

The trial court held a hearing and issued a tentative ruling denying the motion in limine. The following day, the trial court held a second hearing at which it denied the motion.

### b. *Governing law*

Evidence Code section 801 outlines the subject matter on which an expert may testify and the permissible bases for the expert's opinion.  The statute provides:

> "If a witness is testifying as an expert, his testimony in the form of an opinion is limited to such an opinion as is:
>
> "(a) Related to a subject that is sufficiently beyond common experience that the opinion of an expert would assist the trier of fact; and
>
> "(b) Based on matter (including his special knowledge, skill, experience, training, and education) perceived by or personally known to the witness or made known to him at or before the hearing, whether or not admissible, that is of a type that reasonably may be relied upon by an expert in forming an opinion upon the subject to which his testimony relates, unless an expert is precluded by law from using such matter as a basis for his opinion."

Evidence Code section 802 provides in relevant part, "A witness testifying in the form of an opinion may state on direct examination the reasons for his opinion and the matter (including, in the case of an expert, his special knowledge, skill, experience, training, and education) upon which it is based, unless he is precluded by law from using such reasons or matter as a basis for his opinion."

20

"[U]nder Evidence Code sections 801, subdivision (b), and 802, the trial court acts as a gatekeeper to exclude expert opinion testimony that is (1) based on matter of a type on which an expert may not reasonably rely, (2) based on reasons unsupported by the material on which the expert relies, or (3) speculative." (*Sargon Enterprises, Inc. v. University of Southern California* (2012) 55 Cal.4th 747, 771-772 (*Sargon*).) "The goal of trial court gatekeeping is simply to exclude 'clearly invalid and unreliable' expert opinion. [Citation.]" (*Id*. at p. 772.)

c. *Application*

Brown claims that Mitchell's testimony was inadmissible under Evidence Code sections 801 and 802 because it was "unfounded in fact and science" and constituted " 'junk science.' " Brown argues that this is so because "Mitchell did not analyze the defective bicycle fork with any generally accepted scientific tools like a scan electron microscope (SEM), x-ray, ultra-sound, or chemical analysis."

Brown failed to demonstrate either in the trial court or in this court that the scientific tools to which she refers are the exclusive methods of scientific analysis in this field. Further, Brown has not demonstrated that personal observation is not a methodology that is reasonably employed by experts in the field, or that Mitchell's opinions, which were drawn from his observations of Voigt's bicycle, were unsupported, based on pure speculation, or otherwise " 'clearly invalid and unreliable.' " (*Sargon, supra*, 55 Cal.4th at p. 772.) In short, Brown fails to explain why Mitchell's deposition testimony that he personally examined the bicycle in question and that it bore physical evidence consistent with his theory of a foreign object strike constitutes " 'junk science.' "

21

Accordingly, we conclude that the trial court did not abuse its discretion in denying Brown's motion in limine to exclude expert testimony concerning the possibility that a foreign object struck Voigt's bicycle fork.

D.    *Brown has forfeited her challenge to the trial court's denial of her motion for new trial*

In her opening brief, Brown contends that the trial court committed reversible error in denying her motion for new trial.  The entirety of Brown's argument in support of this claim is as follows:

> "For the reasons stated in Brown's motion for new trial, exhibits 1-36 attached to the Notice of Lodgment of Exhibits in Support of Plaintiff's Motion for New Trial, lodged with the Court of Appeal and made a part of the record, and for the reasons stated herein, Judge Dahlquist's denial of Brown's motion was an abuse of power and therefore was reversible error."[20]

"It is well settled that the Court of Appeal does not permit incorporation by reference of documents filed in the trial court."  (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 294, fn. 20; see, e.g, *Banning v. Newdow* (2004) 119 Cal.App.4th 438, 455 ["incorporation of trial court arguments in an appellate brief is inappropriate"]; *Colores v. Board of Trustees* (2003) 105 Cal.App.4th 1293, 1301, fn. 2 ["[I]t is not appropriate to incorporate by reference, into a brief, points and authorities contained in trial court papers, even if such papers are made a part of the appellate record"].)

It is equally well established that an appellate court need not consider such improperly incorporated arguments. (See, e.g. *Parker v. Wolters Kluwer United States,*

---

[20]    Brown included record citations to both her motion for new trial and supporting documents and the trial court's order denying the motion.

22

*Inc.* (2007)149 Cal.App.4th 285, 291; *Garrick Development Co. v. Hayward Unified School Dist.* (1992) 3 Cal.App.4th 320, 334 ["Rather than brief those arguments, they purport to 'incorporate' them from papers filed below. We do not consider such arguments on appeal"].)

Brown's appellate brief presents no argument for reversing the trial court's denial of her motion for new trial, apart from her improper incorporation of her trial court pleadings. Accordingly, we conclude that Brown has forfeited any contention that the trial court erred in denying her motion for new trial.

E.    *Brown has not demonstrated that the trial court's rulings violated her right to due process*

Brown contends that the trial court's "collective rulings" demonstrate that the court was prejudiced against her and her counsel, and violated her right to due process. We have rejected all of Brown's claims of error. There is thus no basis for reversing the judgment on this ground.

IV.

DISPOSITION

The judgment and the order denying Brown's motion for new trial are affirmed.[21]

ABG is entitled to recover costs on appeal.

AARON, J.

WE CONCUR:

HUFFMAN, Acting P. J.

O'ROURKE, J.

---

[21]     In light of our affirmance of the judgment, we need not consider Brown's contention that, "If this court reverses, such that Brown prevails, she should be awarded attorney fees and costs for this appeal and the trial court proceedings."