Filed 7/28/23  S.J. v. G.V. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| S.J., Jr.,<br><br>    Respondent,<br><br>    v.<br><br>G.V.,<br><br>    Appellant. | D079921<br><br><br><br>(Super. Ct. No. D561668) |

APPEAL from an order of the Superior Court of San Diego County, Daniel S. Belsky, Judge.  Affirmed.

G.V., in pro. per., for Appellant.

S.J., Jr., in pro. per., for Respondent.

Appellant G.V. (mother) appeals from an October 2021 family court order that, among other things, modifies parental visitation for their minor child on the request of respondent S.J., Jr. (father).  Mother contends the family court erred in its custody order by ignoring her evidence showing that detriment to the child would result from granting father's request.  She further contends the court erred by assuming she had not properly filed responsive papers, and deprived her of a fair hearing due to its partiality and

bias. Because mother has not met her burden to demonstrate error, and her claims are otherwise unsupported by the record of the hearing, we affirm the order.

FACTUAL AND PROCEDURAL BACKGROUND

The parties in this appeal are self-represented litigants. Because mother provides minimal record citations in her recitation of the factual and procedural history, which does not set out an impartial summary of the facts pertinent to the court's order, we take the underlying facts and procedure from the documents contained in the clerk's transcript and the reporter's transcript of the hearing at issue.[1] We state the facts in the light most favorable to the family court's order. (*In re Marriage of Mix* (1975) 14 Cal.3d 604, 614; *Chalmers v. Hirschkop* (2013) 213 Cal.App.4th 289, 300.) We disregard assertions that are not supported by proper record citations or are unsupported by the existing record. (See *Young v. California Fish and Game Commission* (2018) 24 Cal.App.5th 1178, 1191; *Harshad & Nasir Corp. v. Global Sign Systems, Inc.* (2017) 14 Cal.App.5th 523, 527, fn. 3 ["We are not required to scour the record in search of support for a party's factual statements and may disregard such unsupported statements"].)

The parties are the unmarried parents to the child, who was born in 2009. In 2016, father instituted family court proceedings to establish a relationship with the child. By 2018, the parties were subject to a custody and visitation order under which, among other things, mother had legal custody of the child, who would primarily reside with her in Sacramento

---

[1] Throughout her briefing, mother purports to recite facts concerning her relationship with father and discusses proceedings that are not properly before us. Our appellate jurisdiction is " 'limited in scope to the notice of appeal.' " (*Ellis v. Ellis* (2015) 235 Cal.App.4th 837, 846.)

2

County; father and the child would participate in conjoint therapy; and father would have up to eight hours of supervised visitation each month, stepping up to 16 hours each month upon the occurrence of certain conditions, including specified notice to mother.

In June 2021, father filed a request for an order seeking a change in visitation to permit him overnight visits with the child, including visits in San Diego. He submitted a supporting declaration recounting some background and events occurring since the family court's last visitation order.

Mother filed a form responsive declaration in July 2021 with lengthy attachments, including a visitation plan. She set out her detailed version of events leading up to the filing, advising the court that she did not consent to father's requests.

On the day of the October 14, 2021 hearing on father's request, mother filed a declaration regarding the family court services mediator's report about the parties' matter.[2] Both parties were self-represented at the hearing and sworn in by the family court. At the outset of the hearing the court stated: "We are here on [father's] June 24, 2021 [request for order] regarding child visitation. I didn't see a proof of service, but there was a response." The court confirmed that the parties had attended the family court services mediation, then elicited from father whether he agreed with or wanted modifications to the mediator's visitation recommendations. While father

---

[2]     Mother's papers were initially file stamped October 13, 2021, but that stamp appears to contain a handwritten note cancelling it and another file stamp dated October 14, 2021. Mother had earlier filed a complaint about the mediator handling their family court services session, claiming the mediator had sided with father and did not treat the parties equally. Mother repeats her criticisms on appeal, purporting to characterize the interactions but citing only to her own declaration and complaint.

3

answered, the court clerk interjected, asking whether mother was in the court's business office that morning. The following discussion occurred:

"[Mother]: I was there. I was trying to get copies of the two declarations that [father] wasn't served with.

"The court: That he wasn't served with?

"[Mother]: Right.

"The clerk: She said it was you.

"The court: Apparently, something was filed yesterday, but it's late. The court is not—doesn't have time to review it.

"The clerk: So I'm going to return this to you.

"The court: All right. The court is ordering that it be stricken from the register of actions because it wasn't filed—

"[Mother]: I have copies here, but I didn't get a chance to serve him.

"The court: You can refile it. But he doesn't have it; the court doesn't have it; there is no time to read two inches of paper; and it's late. So it won't be considered."

The court continued with the hearing, listening to father's proposal about modifications to the mediator's visitation recommendations. The court then summarized the mediator's proposal, which included father visiting the child in Sacramento for six months before visitation was permitted in San Diego. Father asked that the court change that term to three months, explaining he had been making visits in the meantime. Father also confirmed he agreed the child should be in counseling, pointing out the child had expressed fears about being homesick and about getting on an airplane. The court suggested father fly with the child to San Diego for the first couple of visits to keep the child comfortable. The court then turned to mother:

"The court: . . . [¶] . . . [I]s that all agreeable to you?

4

"[Mother]: Yes, it is. It's fine. I just—I think it would be good to stick to the six-month [*sic*] just to allow [the child] that time to really get the time with the therapist." Mother explained she had told father she was trying to set the child up with a more experienced and specialized adolescent therapist who could work with the child's fears: "the issue of the flying, the issue of the overnight stays." The court said, "Yeah. And another issue that could be addressed is they could talk about when [the child] is ready to start going to San Diego, if it is before six months. You know, maybe if [the child] is going to regular therapy, [the child] will start feeling better about that and more comfortable and . . . will express to the therapist that [the child] is comfortable doing that before six months." Mother responded, "That's fair."

The court then proceeded to put its order on the record, adopting the family court services mediator's recommendations with modifications. During the court's recitation, father asked whether his visitation would be limited to San Diego, or whether he could travel outside of California to visit family in other states. The court asked mother: "How do you feel about that?" Mother responded, "[Father] has—he drinks a lot of alcohol." She told the court father was "constantly drinking" and it was the "lifestyle he leads" that "has not changed, from my observation." The discussion continued:

"[Mother]: "That's the only thing. If it weren't for that, I would be okay with it. But it just makes me leery with [the child] being under his care outside—

"The court: That issue isn't even discussed in the family court services report, is it?

"[Mother]: I brought it up to the mediator's attention, and I had filed a complaint with [family court services]. It's one of the things that I had filed with the court.

5

"The court: Is it in the report?

"[Mother]: No. She left it out."

Mother advised the court, and father confirmed, that he had committed a DUI in 2010. Father stated he had not had one since that time or any other criminal history other than an arrest due to mistaken identity, after which the case was dropped. The court asked about father's employment and his drinking habits, and if he drank around the child. Father said he would have a beer while at dinner with mother and the child, but did not drink alcohol when he was with the child. The court asked if father understood mother's concern, and father responded: "I understand anybody's concern with alcohol. I don't understand where [mother's] concern is coming from. I do think that what she is going off of is fabricated, but I do understand anybody's concern if somebody was an overly-drinking person with a child."

The court again turned to mother: "So let me ask [mother]. [¶] Do you have any evidence that [the child's] health, safety, or welfare have ever been put at risk when [the child] is in father's care?" Mother replied, "No evidence, no."

The court continued putting its order on the record, then told mother: "Now, . . . if you ever have evidence you believe shows that [the child's] health, safety, or welfare are put at risk by father, you can always come into court seeking an emergency order on an ex parte basis. You can contact CWS, Child Welfare Services. You can contact law enforcement. [¶] I'm not getting the feeling that that's the case. [S.J., Jr.] impresses the Court as a caring, loving father who clearly wants to have a good relationship with [the child], which is in [the child's] best interests. [¶] Okay?" Mother responded, "Uh-huh."

6

The matter proceeded with the court answering mother's question about father's contact with the therapist and ability to schedule appointments. It reiterated that mother had sole legal custody and clarified that while the child was required to remain in therapy until released by the therapist or a different court order, mother would be the one making arrangements. The court concluded: "Now, if the therapist wants to speak to you and/or father, he or she is certainly welcome to do that. You are both ordered to cooperate in good faith with whatever the therapist thinks is best for [the child]." Mother responded, "Got it. Okay."

The court wished the parties good luck, and both mother and father thanked the court, concluding the hearing.

## DISCUSSION

### I. *Standard of Review and Principles of Appellate Review*

We begin with the appropriate standards of appellate review. Mother contends this court must undertake de novo review of the family court's custody ruling, review for clear error the court's ruling concerning the late-filing of her documents, and apply an abuse of discretion standard to her claim of judicial bias and deprivation of a fair hearing. She cites a Federal Rule of Civil Procedure and out-of-state authorities for these propositions. These authorities, which mother does not discuss or analyze in any substantive manner, do not bind us. (See *Episcopal Church Cases* (2009) 45 Cal.4th 467, 490 ["out-of-state decisions are not binding on this court"]; *Hefczyc v. Rady Children's Hospital-San Diego* (2017) 17 Cal.App.5th 518, 544 [only in the absence of relevant state precedent do California courts look to federal rules for guidance], disapproved on another ground in *Noel v. Thrifty Payless, Inc.* (2019) 7 Cal.5th 955, 986, fn. 15.)

7

We typically review custody and visitation orders under the deferential abuse of discretion standard.  (See *Montenegro v. Diaz* (2001) 26 Cal.4th 249, 255; *Ed H. v. Ashley C.* (2017) 14 Cal.App.5th 899, 904; *Chalmers v. Hirschkop*, *supra*, 213 Cal.App.4th at p. 299.)  Under this standard, "we must uphold the trial court 'ruling if it is correct on any basis, regardless of whether such basis was actually invoked.' " (*Montenegro*, at p. 255; *Ed H. v. Ashley C.*, at p. 904.)  Reversal is only warranted " 'if there is no reasonable basis upon which the trial court could conclude that its decision advanced the best interests of the child.' " (*Ed H. v. Ashley C.*, at p. 904.)  " ' " 'Broad deference must be shown to the trial judge.  The reviewing court should interfere only " 'if [it] find[s] that under all the evidence, viewed most favorably in support of the trial court's action, no judge could reasonably have made the order that he did.' . . ." ' " ' " (*Ibid.*)  A court abuses its discretion if it applies improper criteria or makes incorrect legal assumptions.  (*S.Y. v. Superior Court* (2018) 29 Cal.App.5th 324, 333.)

We review the court's factual findings for substantial evidence, in the light most favorable to the order.  (*S.Y. v. Superior Court*, *supra*, 29 Cal.App.5th at p. 334.)  Under the substantial evidence standard, we are required to accept all evidence supporting the family court's order, completely disregard contrary evidence, and draw all reasonable inferences from the evidence to support the order.  (See *Schmidt v. Superior Court* (2020) 44 Cal.App.5th 570, 581-582.)  We independently review matters presenting pure questions of law, not involving the resolution of disputed facts.  (*Ed H. v. Ashley C.*, *supra*, 14 Cal.App.5th at p. 904.)

As for the claim of judicial bias, an appellant must preserve such a claim for appellate review by objecting below to the alleged improprieties or asking the judge to either correct the assertedly offending remarks or recuse

8

from the matter. (See *Moulton Niguel Water Dist. v. Colombo* (2003) 111 Cal.App.4th 1210, 1218.)

Mother's appeal is subject to other settled principles of appellate review. We presume the correctness of the family court's order and it is her burden as the appellant to affirmatively show error. (See *Jameson v. Desta* (2018) 5 Cal.5th 594, 608-609; *In re Marriage of Khera & Sameer* (2012) 206 Cal.App.4th 1467, 1484.) We also presume judicial duty is properly performed; that the court below knows and applies the correct statutory and case law, and will ignore material it knows is incompetent, irrelevant, or inadmissible. (*S.Y. v. Superior Court, supra*, 29 Cal.App.5th at p. 333; *In re Marriage of Davenport* (2011) 194 Cal.App.4th 1507, 1526.) Mother must provide cogent legal argument in support of her claims of error with citation to relevant legal authority. (Cal. Rules of Court, rule 8.204(a)(1)(B), (C); see *United Grand Corp. v. Malibu Hillbillies, LLC* (2019) 36 Cal.App.5th 142, 153; *Tanguilig v. Valdez* (2019) 36 Cal.App.5th 514, 520; *Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1246-1247.) "We may and do 'disregard conclusory arguments that are not supported by pertinent legal authority or fail to disclose the reasoning by which the appellant reached the conclusions [s]he wants us to adopt.'" (*United Grand Corp.*, at p. 153.)

"[A]s a party appearing in propria persona, [mother] 'is entitled to the same, but no greater, consideration than other litigants and attorneys.' [Citations.] Accordingly, we may disregard factual contentions that are not supported by citations to the record [citation] or are based on information that is outside the record." (*Tanguilig v. Valdez, supra,* 36 Cal.App.5th at p. 520; *McComber v. Wells* (1999) 72 Cal.App.4th 512, 523 ["Although [appellant] is representing herself in this appeal she is not entitled to special treatment and is required to follow the rules"].)

9

## II. *Challenge to Custody Order*

Mother challenges the court's custody order, claiming the court ignored her evidence that assertedly proved granting father's request would be detrimental to their child. Despite this contention in her heading, the substance of mother's argument is that the court treated her rudely and unfairly, did not review her documents or prepare for the matter, and rushed through so as to deny her a fair hearing. According to mother, the court stated "off the record" that it only reviewed father's documents, but did not say whether it reviewed what she had submitted. She asserts that the court "had no intention to hear anything [she] had to say, nor did [the court] care to allow [her] to speak or advocate for [their] child." She maintains, citing out-of-state authority, that the court failed to do its judicial duty.

The factual assertions, which are entirely unsupported by citations to the record, do not abide by the standards summarized above. They are also unsupported by the reporter's transcript, which we have extensively summarized above. It shows that the court at the outset acknowledged mother had filed a response to father's request for order. Though the court was silent as to whether it had actually reviewed those papers, we presume it did so in the absence of a showing otherwise. (*S.Y. v. Superior Court, supra*, 29 Cal.App.5th at p. 333.) Mother has not made such a showing by her bare unsupported assertions. And mother's contention, made in her heading alone, that her evidence proved granting father's request would be detrimental, disregards the substantial evidence standard of appellate review. Mother does not cite to any evidence that was before the court, including evidence favoring her position, but if she had, we would accept all evidence supporting its order and disregard contrary evidence. (*Schmidt v. Superior Court, supra*, 44 Cal.App.5th at pp. 581-582.)

10

Even if we could glean some salient points by mother about the evidence relevant to the court's visitation order, mother fails to support any such point with reasoned argument and citations to relevant authority, allowing us to treat the point as waived. (*In re Marriage of Brandes* (2015) 239 Cal.App.4th 1461, 1481 [" 'When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as waived' "; reviewing court is " ' "not bound to develop appellants' arguments for them" ' "].) There is no basis to overturn the court's October 2021 visitation order.

III. *Challenge to Court's Rejection of Mother's Declaration Regarding Family Court Services Mediation*

Mother's contention that the family court erred by rejecting her document filed on the day of the hearing fares no better. She claims the court assumed the document she attempted to file was her response to father's June 2021 request for order, and as a result "[her] and [the] child's concerns were not taken into consideration at all." Mother asserts, "Had the judge looked at [her responsive declaration] prior to his outburst and accusations, this hearing would have proceeded differently and would have had a different outcome."

The record does not support mother's argument, since, as stated, the court acknowledged mother had filed a response to father's request for order, and we presume it considered those papers. The document rejected by the court was mother's complaint about the family court services mediator, papers that the court advised mother she could refile. Mother otherwise provides no reasoned argument or persuasive authority for the proposition that this filing was timely or proper in the absence of a proof of service on

11

father.[3] Nor does the record support mother's claim the court did not consider her concerns; it shows the court asked for mother's input and listened to her position on father's visitation requests. The court went so far as to ask father whether he understood mother's concerns about his alcohol use and explored the issue with both parties. The court respectfully addressed mother and advised her of the consequence of her having sole legal custody of the child. Mother has not demonstrated error.

IV. *Mother's Claims of Bias and Unfair Hearing*

Mother contends the family court deprived her of a fair hearing and treated her with partiality, bias and prejudice. She again supports her contentions with solely out-of-state authorities. According to mother, the court demonstrated such bias and prejudice, mistreated her, and denied her a fair hearing when it "scolded [her]" about her late-filed documents before strangers in the courtroom; erroneously assumed the document she had attempted to file that day was her responsive declaration, causing her "much humiliation"; and cut her off, rushing the hearing and correcting her grammar with the intent to "humiliate [her] before his courtroom." None of

---

[3]     Mother cites *Green v. Baca* (C.D. Cal. 2003) 219 F.R.D. 485 without discussion for the proposition that her document was filed in time for the clerks to "scan it and rush it to the judge to review prior to the hearing the next day . . . ." At the cited page in *Green*, the court discussed a magistrate's findings of fact and the standards for reversing such findings. (*Id*. at p. 489.) We see no relevance to mother's proposition.

her claims are accompanied by citations to the reporter's transcript of the hearing.[4]

Under the previously summarized principles of appellate review, mother has forfeited any claim of judicial bias. The reporter's transcript shows she did not timely raise or object to what she perceived as bias in the proceedings below. (*Moulton Niguel Water Dist. v. Colombo, supra*, 111 Cal.App.4th at p. 1218.) Additionally, her claims are conclusory and absent substantive legal analysis showing prejudicial bias by the trial court warranting reversal. (*Jameson v. Desta, supra*, 5 Cal.5th at pp. 608-609.) Although elsewhere in her brief mother refers to certain canons of judicial conduct regarding integrity, independence, fairness, impartiality, and diligence, she does not present any substantive legal argument showing the family court violated any of those canons. Rather, she merely claims it was "clear" the court did not prepare for the hearing, review her response, or review the history of their case, but instead "was just rushing through the hearings without being careful as to what he was doing and how his decisions were going to affect the lives of the people involved, especially children."

Having reviewed the reporter's transcript, we find mother's assertions of bias, prejudice and misconduct unsupported. Mother claims the court "stated [it] only reviewed [father's] request and only allowed [father] to speak

---

[4]    In the factual and procedural history section of her brief, mother cites to pages 10, 14 and 18 of the reporter's transcript to support her assertion that the family court, when granting something father had requested, "would look over at [her] with a smirk on his face to see [her] reaction." We see nothing on those pages of the reporter's transcript that objectively supports mother's subjective interpretation of the court's actions. Mother intersperses her bias arguments with claims that the court's ruling "further caused [the] child severe emotional harm." She purports to describe the child's negative reaction to the hearing. We disregard these assertions, which are matters outside the record.

but not [mother]." She claims the court cut her off, interrupted her, or did not allow her to completely finish her sentences. She further asserts the court was "biased," "rude," "condescending" and "abusive" to not only her, but other women in the courtroom. Mother's observations are unsupported by any record citation and constitute matters outside the record that we disregard. Mother suggests the court mocked her speech because she was Hispanic, but the record merely shows the court was trying to understand what she was saying about adolescent therapy, and mother did not respond with umbrage or otherwise express a negative reaction at the hearing during that exchange. While the court may have interjected at that time and also while mother was speaking about father's asserted drinking issues, it otherwise listened to her, respectfully addressed her, and included her thoughts in its consideration of the matter.

To the extent mother asserts the trial court showed its bias by agreeing with the family court services recommendation to give father additional overnight visits, including in San Diego, and otherwise by making findings and decisions adverse to her, she does not show it acted outside the normal function of a family court in considering and weighing the papers and evidence and making findings of fact based on those matters. "The mere fact that the [family] court issued rulings adverse to [mother] on several matters in this case, even assuming one or more of those rulings were erroneous, does not indicate an appearance of bias, much less demonstrate actual bias." (*Brown v. American Bicycle Group, LLC* (2014) 224 Cal.App.4th 665, 674; see also *Blakemore v. Superior Court* (2005) 129 Cal.App.4th 36, 59-60 [mere erroneous rulings do not show appearance of bias].) Likewise, "[m]ere expressions of opinion, based on observation of the witnesses and evidence, do

not demonstrate judicial bias." (*Schmidt v. Superior Court*, *supra*, 44 Cal.App.5th at p. 589.)

Finally, to the extent mother claims she was denied her right to a fair hearing due to the family court's alleged bias, she has the burden to show such bias was so prejudicial that it deprived her of a fair, as opposed to a perfect, hearing. (See *Schmidt v. Superior Court*, *supra*, 44 Cal.App.5th at p. 589.) She must demonstrate the family court's alleged bias was so great that it became constitutionally intolerable. (*People v. Freeman* (2010) 47 Cal.4th 993, 1001.) As stated, we have reviewed the record on appeal. Contrary to mother's assertions, it demonstrates she received a fair hearing by an impartial and unbiased court.

## DISPOSITION

The order is affirmed.

O'ROURKE, J.

WE CONCUR:

McCONNELL, P. J.

DATO, J.

15