Filed 3/11/25  Marriage of Hernandez and Renteria CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re the Marriage of ERIKA HERNANDEZ and NATHANAEL RENTERIA. | |
| ERIKA HERNANDEZ, Respondent, v. NATHANAEL RENTERIA, Appellant. | F088472 (Super. Ct. No. 09FS0414) **OPINION** |

APPEAL from an order of the Superior Court of Kings County.  Mark Skinner, Commissioner.

Nathanael Renteria, in pro. per., for Appellant.

No appearance for Respondent.

-ooOoo-

Nathanael Renteria (father) challenges the child custody order in this family law case.  The trial court essentially ordered full physical and legal custody of the children to the mother, Erika Hernandez, with limited rights of visitation to Renteria.

On appeal, Renteria generally claims the trial court was biased and partial, the proceedings did not comply with Family Code[1] section 3044 relating to "domestic violence," and the court misused certain facts. We affirm the order.

## BACKGROUND

The record in this case begins in the midst of a family law case. In December 2023, a child custody evaluator and investigator recommended mother and father share physical and legal custody of their five children, three females and two males, then ranging in age from 8 to 17. The evaluator noted two children, the 10 and 13 year olds, favored Renteria and testified the children were safe with their father and would benefit from that relationship. The evaluator was aware of domestic violence issues and believed Renteria was "overcoming" the section 3044 presumption against custody for domestic violence offenders.[2] A separate evaluator recommended sole custody with the mother.[3]

In May 2024, the child custody issue proceeded to formal hearing.[4] During the hearing, Hernandez testified to various acts of domestic violence perpetrated by Renteria—"hitting," "slapping," "pulling," "pushing," and "a lot more." She had also obtained a restraining order against Renteria, which she testified was violated on several occasions. Renteria disputed the violations, offering his own explanations and perspective. He also testified he lost his job due to union issues.

During the proceedings, the trial court itself asked witnesses many questions. The court asked questions during both Renteria's and Hernandez's examinations. For

---

[1] All statutory references are to the Family Code.

[2] Section 3044 states, in pertinent part, "there is a rebuttable presumption that an award of sole or joint physical or legal custody of a child to a person who has perpetrated domestic violence is detrimental to the best interest of the child[.]"

[3] The date this recommendation was formed is unclear.

[4] Hernandez was represented by counsel; Renteria was not.

2.

example, it asked a testifying teacher to emphasize the fact a child "missed" Renteria. It also asked questions of Hernandez about Renteria's alcohol consumption, abuse, and aggression.

The trial court also printed documents for each party during the proceedings. When it printed a document for Hernandez, who was represented by counsel, the court remarked, "Renteria should be screaming at the top of his lungs."

Throughout the formal hearing, the trial court gave Renteria "leeway" to present his case because he was "not a lawyer." The court even, at one point, objected to Hernandez's testimony. It later helped Renteria ask questions about an incident during a child exchange where one child wished to remain with Renteria.

When Renteria sought to enter into evidence a letter from his daughter—purporting to state a preference to live with her father—the trial court expressed a willingness "to accept testimony from a minor" but would not accept "anything [else] … without permission." Hernandez, in her testimony, acknowledged her daughter wrote a letter "telling the judge that she's wanting to go with dad and says that because dad can provide for her necessities."

The trial court initially opined, based on evidence it considered during the formal hearing, the child-author was "not mature enough to make her own decisions[.]" It ultimately excluded the letter from evidence due to a longstanding "policy" to "not entertain input from children unless it's been invited."

After both parties concluded presenting their cases, and prior to argument and final order, the trial court informed Renteria it had to consider restraining order violations under section 3044. The court stated section "3044 is [the] biggest question in [the] case," specifically "[w]hether [the] presumption [was] rebutted." It further stated it had not "heard anything from" Renteria "concerning what" he learned in treatment programs relating to domestic violence. In argument, Renteria explained, in a "batterer's

3.

intervention program," he "learned accountability" and "[n]ot continuing the vicious cycle of violence."

The trial court issued a written decision and order. It explicitly went through each factor in section 3044. It acknowledged 1) Renteria successfully "completed a batterer's treatment program" and an "anger management course," 2) "use of drugs and alcohol" did "not substantially impact[] the minor children," 3) Renteria "successfully completed a parenting class," 4) Renteria was not on probation or parole but a pending case alleged a restraining order violation, 5) and Renteria was "restrained by a protective order" and "there [were] a significant number of violations of the orders." The court described in detail three such violations, finding Hernandez's testimony "credible" and Renteria's explanations "not credible[.]" The court did "not find [the section 3044] presumption ha[d] been rebutted." It then awarded "sole legal and physical custody to [] Hernandez." Visitation orders for Renteria were modified to allow visitation at Hernandez's "discretion," except that one son could decide on his own whether to visit with Renteria.

In the order, the trial court stated its belief "Renteria [was] too consumed with winning and beating [Hernandez] down in litigation rather than finding peace and caring for his family." It noted an incident in which he "stopped making … car payments," leading to the car's " 'repossession,' "[5] and noted Renteria "ha[d] paid very little support over the months since an order was issued." The court opined Renteria was not "forced out of his job" but rather "cho[se] to become embroiled in a fight between labor and management" due to "an inappropriate affinity for conflict," then "quit" his job simply "to cause harm to" Hernandez.

---

[5] This " 'repossession' " incident was one of the restraining order violations. Renteria disputed Hernandez's factual account, but the trial court found him not credible.

4.

## DISCUSSION

Several questions are presented on appeal. Was the trial court biased and partial? Did the trial court fail to comply with and apply section 3044? Did sufficient evidence support the restraining order violations? Did the court misuse evidence about Renteria's union activity? We find no prejudicial error and affirm.

## I. Impartiality

" 'The Due Process Clause [in the federal Constitution] entitles a person to an impartial and disinterested tribunal in both civil and criminal cases.' " (*Brown v. American Bicycle Group, LLC* (2014) 224 Cal.App.4th 665, 673; *Huang v. Hanks* (2018) 23 Cal.App.5th 179, 183 (*Huang*).) Here, Renteria alleges partiality in the trial court's questions, printing documents, anti-religious bias, and a statement the trial court made to counsel for Hernandez, stating " 'I heard you were cheating on me[.]' " Our review reveals no partiality.

The trial court's questioning was evenhanded to each side, including asking questions beneficial to Renteria. In any event, " '[i]t is settled that a judge's examination of a witness may not be assigned as error on appeal where no objection was made when the questioning occurred.' " (*People v. Raviart* (2001) 93 Cal.App.4th 258, 269.) Renteria made no objection in this case.

The trial court printed documents for both parties, including at Renteria's request. We discern no advocacy or partisanship in its actions.

The record does not support Renteria's claim about the trial court's statement to Hernandez's counsel.[6] Even if we assume the claim is true, the record is insufficient to establish any prejudice—as it stands, any inference from the statement is pure speculation and lacks crucial context.

_____

[6] Renteria alleges the court made the offending statement on September 8, 2023. The only item in the appellate record from that date is a minute order. The minute order does not reflect the alleged statement.

5.

Neither does the record support Renteria's claims regarding anti-religious bias.[7] It is Renteria's burden to present an adequate record on appeal. (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608-609 (*Jameson*).) He has not done so.

In sum, there is no evidence the trial court acted in a partisan manner. Renteria's "claim of bias made on appeal for the first time appears primarily to be limited to complaints about the fairness of the trial court rulings, which ' "do not establish a charge of judicial bias, especially when they are subject to review." [citation].' "[8] (*Huang, supra,* 23 Cal.App.5th at pp. 183-184, fn. omitted.)

To the extent Renteria claims the trial court erred in ruling on a judicial disqualification motion, the issue is not appealable. " 'The determination of the question of the disqualification of a judge is not an appealable order and may be reviewed only by a writ of mandate from the appropriate court of appeal sought within 10 days of notice to the parties of the decision and only by the parties to the proceeding.' " (*People v. Panah* (2005) 35 Cal.4th 395, 444.)

## II. Section 3044

Section 3044, subdivision (a) materially provides that, "[u]pon a finding by the court that a party seeking custody of a child has perpetrated domestic violence within the

[7] Renteria asserts this occurred in October 2022. The appellate record begins in September 2023.

[8] Renteria cites the trial "court's hostile reaction to the submission of [his daughter's] letter, rather than addressing the sufficient age standard and its contents," as "evidence [of] bias[.]" The record, however, indicates the court nonetheless did consider the letter's contents through Hernandez's testimony and also considered the maturity standard. The court received evidence regarding the daughter's purported preference through Hernandez's testimony. There is no conceivable prejudice, as Hernandez's testimony is far more probative and persuasive than the letter itself.

Similarly, Renteria objects to a pre-trial continuance in which he "stated that he wanted to exclude evidence" and "express[ed a] desire to move forward with trial that day." He does not describe any prejudice resulting from the continuance, apparently denoting the ruling as evidence of bias. We discern no bias in granting the continuance.

previous five years against the other party seeking custody of the child … there is a rebuttable presumption that an award of sole or joint physical or legal custody of a child to a person who has perpetrated domestic violence is detrimental to the best interest of the child[.]" In cases involving domestic violence, "the court shall inform the parties of the existence of this section and shall give them a copy of this section prior to custody mediation in the case." (§ 3044, subd. (h).)

The record appears to justify Renteria's claim the trial court failed to admonish "the parties of the existence of" section 3044 "prior to custody mediation[.]" The court informed Renteria about the section prior to final argument after soliciting all evidence. This fact strongly implies the court did not inform Renteria about section 3044 prior to custody mediation.[9]

Nonetheless, it is Renteria's burden to establish reversible error. (*Jameson, supra,* 5 Cal.5th at pp. 608-609.) He has not done so. For example, he cites to no evidence or argument explaining how he would have presented a different case, or different evidence, to rebut the section 3044 presumption. In other words, he has not met his burden to prove why or how the trial court may have ruled in his favor on the issue, i.e., finding the section 3044 presumption rebutted.

## III. Restraining Order Violations

Next, Renteria claims insufficient evidence supported the trial court's findings he violated various restraining orders. He asserts the "court's findings regarding the alleged violations lack substantial evidence and rely on subjective interpretations of purported actions."

---

[9] However, Renteria's appellate brief states he was informed "of the existence of … section 3044" several months prior to the formal custody hearing. The child custody evaluators were also aware of and considered the section. There is no conceivable prejudice on this record, particularly because one evaluator explicitly found Renteria rebutted the section 3044 presumption.

We need not belabor the point.  Hernandez testified to several violations—which Renteria disputed—and the court specifically credited her testimony.  In crediting Hernandez's testimony, the court explicitly discredited Renteria.  It is the trial court's prerogative to subjectively interpret facts: "When assessing witness testimony, ' " ' "it is the exclusive province of" ' " ' the trial court ' " ' "to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends." ' " ' [Citation.]  We 'may not insert [our] own views regarding the credibility of witnesses in place of the assessments conveyed by the judgment.' " (*E.G. v. M.L.* (2024) 105 Cal.App.5th 688, 705.)

The trial court here simply credited Hernandez's testimony over Renteria's testimony.  We have no reason to intervene.

## IV.  Union Activity

Finally, the trial court commented on Renteria's union activity, ascribing to him an "affinity for conflict."  In a vacuum, the statement is troubling.  In context, however, the statement simply reflected the court's view Renteria's actions, including union activity and resignation from work, were designed to harm Hernandez and by extension his family.  In other words, the court believed Renteria's conflict at work was a conduit to harm Hernandez.  Because that belief is not unreasonable, we find no error, let alone prejudice, in this claim.

## DISPOSITION

The custody order is affirmed.  Each party to bear its costs.


                                                           SNAUFFER, J.

WE CONCUR:


PEÑA, Acting P. J.


SMITH, J.