Filed 5/21/25  Ndizeye v. City of San Diego CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| DANIEL NDIZEYE, Plaintiff and Appellant, v. CITY OF SAN DIEGO, Defendant and Respondent. | D084061 (Super. Ct. No. 37-2023-00034911-CU-CR-CTL) |


APPEAL from a judgment of the Superior Court of San Diego County, Carolyn M. Caietti, Judge.  Affirmed.

Daniel Ndizeye, in pro. per., for Plaintiff and Appellant.

Mara W. Elliott, City Attorney, M. Travis Phelps, Assistant City Attorney, and Kelly L. McGeehan, Deputy City Attorney, for Defendant and Respondent.


Daniel Ndizeye appeals the judgment dismissing his action against the City of San Diego (the City) for failing adequately to maintain the street and sidewalks in his neighborhood.  The City demurred to the operative

complaint for failure to state a cause of action, and the trial court sustained the demurrer without leave to amend.  We affirm.

## I.

## BACKGROUND

On June 22, 2023, the City received from Ndizeye a claim on its form for claims under the Government Claims Act (the Act; Gov. Code, § 810 et seq.).  He listed "07/2007" as the "Date of Incident" and an address in the 700 block of 51st Street as the "Location of Incident or Accident."  As the "Basis of Claim," Ndizeye wrote:  "Road width [n]on-compliance, sidewalk obstruction, emotional damage, violation of state and local laws, speeding vehicles, road need of speed ramp[,] obstruction of emergency vehicles, fatal consequences of neglected road widths - non-compliant with California fire code, dangerous road entry, and exit."  When asked to "[s]tate why [he] believe[d] the City is responsible for the alleged injury, property damage, or loss," Ndizeye responded:  "City negligence in maintaining road safety and non-compliance with state and local regulations demonstrate its accountability for these infrastructure issues.  City's neglect of duty led to unsafe roads and side [*sic*] sidewalks, violating standards."  Ndizeye described the "[a]lleged [i]njury, [p]roperty [d]amage, or [l]oss" as follows:  "Potential accidents risk due to excessive vehicle speed.  Public safety risks from illegal activities in secluded cul-de-sac.  Impeded emergency services access due to narrow roads. Emotional distress from perceived municipal neglect and safety concerns. Impeded pedestrian mobility due to sidewalk obstruction."  Ndizeye did not itemize any damages, but did check a box on the form stating they exceeded $25,000.  He signed the form as a "resident of the neighborhood" and dated it June 20, 2023.

2

After expiration of the 45-day period for the City to act on the claim (Gov. Code, § 911.6), on August 14, 2023, Ndizeye, purporting to act on behalf of himself and others similarly situated, filed a complaint against the City "to seek accountability . . . for its prolonged negligence and discriminatory practices pertaining to the upkeep and safety of the roads and sidewalks within [his] neighborhood." Ndizeye sought to recover damages, declaratory relief, and injunctive relief from the City on negligence and other theories. He amended the complaint on August 31, 2023, and sought the same relief on the same theories.

The City demurred to the first amended complaint on the ground it failed to state facts sufficient to constitute a cause of action. (Code Civ. Proc., § 430.10, subd. (e).) The City argued the action was barred by the statute of limitations; the action was not a proper class action, in part because no claim under the Act had been submitted to the City on behalf of the class; the City is not liable for negligence as a matter of law; and the first amended complaint failed to state a cause of action for dangerous condition of public property, declaratory relief, or injunctive relief. The City asked the trial court to sustain the demurrer and to dismiss the first amended complaint. Hearing on the demurrer was set for January 26, 2024.

On January 3, 2024, before opposition to the demurrer was due, Ndizeye filed a second amended complaint. (Code Civ. Proc., §§ 472, subd. (a) [complaint may be amended before opposition to demurrer is due], 1005, subd. (b) [opposition is due nine court days before hearing].) Again purporting to act on behalf of himself and others similarly situated, he announced "a call to action for [the City] to rectify its ongoing negligence and uphold its responsibility to maintain public infrastructure."

In the second amended complaint, Ndizeye did not mention the claim he had submitted to the City in June 2023. He leveled many accusations against the City concerning its design and maintenance of the street and sidewalks in his neighborhood, including:

- The "conspicuously narrow width" of the street (20 feet) "significantly elevate[s] the inherent safety risks associated with vehicular mobility" when vehicles, which "act as visual barriers," are parked on the street. "The limited width, compounded by parked vehicles and bidirectional traffic, [also] hampers emergency vehicle access, and poses significant risks to the residents and the community at large."

- The surface of the street "is considerably compromised, marred by a significant number of potholes and fissures that disrupt the road's continuity and compromise vehicular stability and maneuverability."

- A "dangerous condition of public property" exists at the stop sign at the intersection of 51st Street and Hilltop Drive, because "vehicles parked in close proximity to this critical junction" obstruct motorists' visibility.[1]

- The City's "glaring delay" in painting curbs red until 2022 "lays bare a troubling pattern of oversight, disregard, and administrative negligence," and "reveals an unsettling neglect for public safety and a marked deviation from standard traffic safety practices."

- The City's "flagrant disregard for speed limit regulation" by failing to install "speed bumps, speed signs, or similar traffic calming devices" has "transformed this residential area into a high-risk zone" where "[d]rivers are routinely observed operating their vehicles at high speeds."

- The sidewalks are in a "disconcerting state of disrepair" due to the City's "lackadaisical approach to public safety." Erection of utility poles "inconveniently in the middle of the sidewalks" and "[u]nchecked growth of vegetation present "a significant hazard" to sidewalk users. "[C]racks, uneven patches, and potential tripping hazards . . . represent

---

[1]    Ndizeye alleged that a collision near the intersection "led to substantial vehicular damage and inflicted injuries upon both drivers." He did not identify either driver or the date of the collision.

4

a significant safety threat to all pedestrians but especially to those with mobility challenges, the elderly, disabled, and children."

- A "pattern" of "systemic bias and discriminatory treatment" toward "individuals of color and those belonging to lower-income groups" who live in Ndizeye's neighborhood emerges when the "hazardous conditions of [their] roads and sidewalks" are contrasted with "the well-maintained and spacious roads observed in predominantly white neighborhoods."

In a section of the second amended complaint labeled "causes of action," Ndizeye summarized his complaints about the street and sidewalks in his neighborhood, and alleged the City's negligence, neglect, and discrimination caused residents emotional distress, physical harm (including tripping on sidewalks and colliding with utility poles), and property damage (including damage to vehicles from potholes, damage to bicycles from uneven sidewalks, and property depreciation). As remedies for these alleged injuries, Ndizeye prayed for the following relief:

- A declaration that the City "has acted negligently and in a discriminatory manner, infringing upon the rights and safety of the Plaintiffs in violation of multiple federal, state, and local legislations."

- $100 million in damages for "physical injuries, emotional distress, property damage, and other consequential losses that the Plaintiffs have suffered as a direct result of [the City's] negligence and discriminatory practices."

- An injunction that the City: (1) "immediately and permanently cease all discriminatory and negligent practices and ensure full compliance with all relevant laws, codes, and ordinances, regarding road and sidewalk maintenance, curb painting, road width, and the provision of adequate emergency access"; (2) enact necessary corrective measures, such as rectifying all existing road and sidewalk conditions that pose safety risks, implementing adequate speed control measures, enhancing visibility at entry and exit points, and ensuring the unhindered passage of emergency vehicles; (3) develop, in consultation with Ndizeye and subject to court review and approval, "a comprehensive plan outlining how [the City] intend[s] to address these

5

issues, including a provision for the ongoing maintenance of roadways, sidewalks, and other relevant public infrastructure"; and (4) establish a regular inspection protocol to ensure the continuous adherence to the set standards of public safety."

At the January 26, 2024 hearing on the City's demurrer to the first amended complaint, the trial court took the matter off calendar because the filing of the second amended complaint rendered the demurrer moot. The court calendared a hearing on a demurrer to the second amended complaint for April 5, 2024.

The City demurred to the second amended complaint on the ground it failed to state facts sufficient to constitute a cause of action. (Code Civ. Proc., § 430.10, subd. (e).) The City argued Ndizeye had not complied with the claim presentation requirement of the Act; the City is not liable for negligence as a matter of law; the second amended complaint failed to state a cause of action for dangerous condition of public property, declaratory relief, or injunctive relief; the City is immune from liability for discretionary decisions in the management of public property; and the action was not a proper class action. The City asked the trial court to sustain the demurrer without leave to amend. In support of the demurrer, the City submitted a declaration from one of its attorneys stating she had a telephone call with Ndizeye to discuss the deficiencies in the second amended complaint and they were unable to resolve the matter. (*Id.*, § 430.41, subd. (a).) The City also submitted a request for judicial notice of the claim Ndizeye had submitted to the City in June 2023.

Ndizeye opposed the demurrer. He argued the City had not met and conferred with him in good faith before it filed the demurrer. Ndizeye also argued the trial court's January 26, 2024 order taking the demurrer to the first amended complaint off calendar as moot judicially estopped the City

6

from demurring on the same grounds it had asserted in the prior demurrer. Ndizeye complained the City was prejudicially delaying the case by filing demurrers and urged the court to proceed to discovery.

The trial court was unable to hear arguments on the demurrer on April 5, 2024, and continued the hearing to April 22. On April 18, Ndizeye filed a statement of disqualification against the judge assigned to the case on the ground that a person aware of the way the judge had handled the case "might reasonably entertain a doubt that the judge would be able to be impartial." (Code Civ. Proc., § 170.1, subd. (a)(6)(A)(iii).) On April 19, the court continued the hearing on the demurrer to May 2. By order filed on April 25, the court struck the statement on the grounds it was not properly served and stated no legal grounds for disqualification. (*Id.*, §§ 170.3, subd. (c)(1), 170.4, subd. (b).) On the same day, Ndizeye filed a first amended statement of disqualification. On May 1, the court ordered that statement stricken on the grounds it was not properly served, was repetitive, and stated no legal grounds for disqualification. (*Id.*, §§ 170.3, subd. (c)(1), 170.4, subds. (b), (c)(3).)

The trial court heard the demurrer to the second amended complaint on May 2, 2024. The court granted the City's request for judicial notice of the claim Ndizeye submitted to the City in June 2023. It granted Ndizeye's request for judicial notice of the Government Claims Act, and denied another request that sought judicial notice of photographs and other documents that were not attached to the request, because it was unclear to the court what Ndizeye wanted it to notice. The court found the City satisfied the meet-and-confer requirement before filing the demurrer. It ruled the second amended complaint failed to state a cause of action because it did not allege facts showing or excusing compliance with the claim presentation requirement of

7

the Act, and the judicially noticed claim showed it was late. The court noted Ndizeye impliedly conceded the validity of the grounds the City raised in the demurrer by failing to respond to them on the merits. (Super. Ct. S.D. County, Local Rules, rule 2.1.19(B).) It also noted he had neither requested leave to amend nor articulated what facts he could add to cure the defects in his pleading. The trial court therefore sustained the demurrer without leave to amend. A judgment of dismissal followed.

II.

DISCUSSION

Ndizeye contends he stated causes of action for negligence and dangerous condition of public property, and the trial court erroneously sustained the City's demurrer on grounds of noncompliance with the claim presentation requirement of the Act and discretionary act immunity under the Act. He also contends the court erred by striking his statements of disqualification and by proceeding while the statements were pending; and such errors, he says, deprived him of the right to amend the pleading and the due process right to an impartial judge. Ndizeye asks us to reverse the order sustaining the demurrer without leave to amend, to set aside all rulings the trial court made while the disqualification statements were pending, and to remand the matter for further proceedings before a different judge and with directions to grant him leave to amend.[2]

_____

[2] In support of his opening brief, Ndizeye filed a request for judicial notice of: (1) photographs of the street and sidewalks in his neighborhood and in another neighborhood; (2) unauthenticated copies of reports and an e-mail to the City about alleged defects in the street and sidewalks; (3) a letter from the City acknowledging receipt of Ndizeye's June 2023 claim; (4) an unauthenticated copy of a petition demanding repairs; and (5) various federal, state, and local statutes, regulations, ordinances, and guidelines. We deny the request. The documents in category Nos. 1, 2, and 4 are not subject

8

A.    *Order Sustaining Demurrer Without Leave to Amend*

We first address the trial court's ruling on the City's demurrer.  " ' "Our standard of review is de novo, i.e., we exercise our independent judgment about whether the complaint states a cause of action as a matter of law." ' [Citation.]  In reviewing the complaint, 'we must assume the truth of all facts properly pleaded by the plaintiff[ ], as well as those that are judicially noticeable.' [Citation.]  We may affirm on any basis stated in the demurrer, regardless of the ground on which the trial court based its ruling." (*Krolikowski v. San Diego City Employees' Retirement System* (2018) 24 Cal.App.5th 537, 549; accord, *Hacala v. Bird Rides, Inc.* (2023) 90 Cal.App.5th 292, 304.)  We review the denial of leave to amend when a demurrer is sustained for abuse of discretion.  (*Greenwood v. City of Los Angeles* (2023) 89 Cal.App.5th 851, 857.)  Such an abuse occurs if there is a reasonable possibility the defect in the pleading can be cured by amendment. (*K.M. v. Grossmont Union High School Dist.* (2022) 84 Cal.App.5th 717, 751.) "Plaintiff must show in what manner he can amend his complaint and how that amendment will change the legal effect of his pleading."  (*Goodman v. Kennedy* (1976) 18 Cal.3d 335, 349.)  The burden of proving a reasonable possibility of curing the defect by amendment "is squarely on the plaintiff." (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)

One ground the City raised in its demurrer was Ndizeye's noncompliance with the claim presentation requirement of the Act.  When a

---

to judicial notice.  (*In re Gary F.* (2014) 226 Cal.App.4th 1076, 1079, fn. 2 [photographs]; *LaChance v. Valverde* (2012) 207 Cal.App.4th 779, 783 [emails]; *Leibert v. Transworld Systems, Inc.* (1995) 32 Cal.App.4th 1693, 1700 [unauthenticated documents of government agency].)  Although the documents in category Nos. 3 and 5 are subject to judicial notice (Evid. Code, §§ 451, subd. (a), 452, subds. (a)–(c), 459, subd. (a)), their consideration is neither necessary nor helpful to resolution of this appeal (*Atempa v. Pedrazzani* (2018) 27 Cal.App.5th 809, 819).

claim is required to be presented to a public entity, which includes a city (Gov. Code, § 900.4), "no suit for money or damages may be brought against [the] public entity" until the claim has been presented to and acted upon or deemed acted upon by the entity (*id.*, § 945.4). A claim must be presented within six months of accrual of the cause of action if it is for injury to person or personal property and within one year after accrual if it is for any other cause of action. (*Id.*, § 911.2, subd. (a).) "[T]he claims statutes require timely filing of a proper claim as a condition precedent to the maintenance of the action." (*City of San Jose v. Superior Court* (1974) 12 Cal.3d 447, 454 (*City of San Jose*).) "[F]ailure to allege facts demonstrating or excusing compliance with the claim presentation requirement subjects a claim against a public entity to a demurrer for failure to state a cause of action." (*State of California v. Superior Court* (2004) 32 Cal.4th 1234, 1239.)

Ndizeye's action is subject to the claim presentation requirement. In his second amended complaint, he sought $100 million from the City as "compensation for physical injuries, emotional distress, property damage, and other consequential losses that the Plaintiffs have suffered as a direct result of [the City's] negligence and discriminatory practices." This qualifies as "a suit for money or damages . . . against a public entity" for which presentation of a claim is required by the Act. (Gov. Code, § 945.4; see *id.*, § 905 ["claims for money or damages against local public entities" must be presented except in cases listed in statute]; *Hart v. Alameda County* (1999) 76 Cal.App.4th 766, 778 (*Hart*) ["A suit for 'money or damages' includes all actions where the plaintiff is seeking monetary relief, regardless whether the action is founded in ' "tort, contract or some other theory" ' "].)[3] Ndizeye's failure to allege

---

[3]    Ndizeye's additional requests for declaratory and injunctive relief do not exempt his action from the claim presentation requirement.

compliance with the claim presentation requirement or excuse therefrom subjected the second amended complaint to demurrer. (*State of California v. Superior Court, supra*, 32 Cal.4th at p. 1239.)

Moreover, judicially noticeable facts showed Ndizeye did not present a claim in compliance with the Act. In ruling on the demurrer, the trial court could, and did, take judicial notice of the claim he submitted to the County. (Code Civ. Proc., § 430.30, subd. (a); Evid Code, § 452, subd. (c); *Gong v. City of Rosemead* (2014) 226 Cal.App.4th 363, 368, fn. 1, 376.) The claim listed "07/2007" as the date of the incident for which Ndizeye sought more than $25,000 for "[e]motional distress" caused by the City's "negligence" and "neglect of duty" in maintaining public roads and sidewalks. Because the claim was based on an alleged "injury to person," it had to be presented "not later than six months after accrual of the cause of action." (Gov. Code, § 911.2, subd. (a); see *Baillargeon v. Department of Water & Power* (1977) 69 Cal.App.3d 670, 682 [§ 911.2's former 100-day deadline applied to claim for infliction of emotional distress because it sought damages for personal injury].) Ndizeye did not present his claim until June 2023, nearly 16 years after he suffered the alleged emotional distress, and he offered no explanation for the delay. "The failure to timely present a claim to the public entity bars the claimant from filing a lawsuit against that public entity." (*California Restaurant Management Systems v. City of San Diego* (2011) 195 Cal.App.4th 1581, 1591.)

Ndizeye argues he complied with the Act by timely presenting a claim to the City. He asserts that although his second amended complaint "clearly

---

(*TrafficSchoolOnline, Inc. v. Clarke* (2003) 112 Cal.App.4th 736, 741; *Gatto v. County of Sonoma* (2002) 98 Cal.App.4th 744, 762; *Hart, supra*, 76 Cal.App.4th at p. 782; *Loehr v. Ventura County Community College Dist.* (1983) 147 Cal.App.3d 1071, 1081.) Nor does his inclusion of class allegations. (*City of San Jose, supra*, 12 Cal.3d at p. 457.)

alleges that the City's negligence in maintaining road safety has been ongoing for over 57 years," the trial court "erroneously focused on a single reference date of 2007, which was included only to provide historical context." Without providing any dates or other circumstances, Ndizeye alleges for the first time in his opening brief that he sustained several injuries as a result of "the City's ongoing failure to repair hazardous road conditions." He claims that: (1) "[d]ue to the narrow road," he "missed classes, failed courses, and suffered financial losses"; (2) he "tripped and sustained an injury" that left "a permanent and debilitating scar"; (3) his "vehicle has sustained recurring damage, including scratches and accumulation of debris," which "necessitates frequent maintenance and costly cleanings" and "has substantially increased his utility bills"; and (4) his "inability to receive regular waste collection . . . due to road conditions has led to uncollected trash, poor air quality, and diminished property value." Ndizeye contends "[t]he nature of the alleged wrongful conduct" by the City "supports the application of the continuing violation doctrine and continuous accrual doctrine"[4] to make his claim timely. We disagree.

---

[4] Under the continuing violation doctrine, "[a]llegations of a pattern of reasonably frequent and similar acts may, in a given case, justify treating the acts as an indivisible course of conduct actionable in its entirety, notwithstanding that the conduct occurred partially outside and partially inside the limitations period." (*Aryeh v. Canon Business Solutions, Inc.* (2013) 55 Cal.4th 1185, 1198 (*Aryeh*).) "Generally speaking, continuous accrual applies whenever there is a continuing or recurring obligation: 'When an obligation or liability arises on a recurring basis, a cause of action accrues each time a wrongful act occurs, triggering a new limitations period.' [Citation.] Because each new breach of such an obligation provides all the elements of a claim—wrongdoing, harm, and causation [citation]—each may be treated as an independently actionable wrong with its own time limit for recovery." (*Id.* at p. 1199.) "[U]nlike the continuing violation doctrine, which renders an entire course of conduct actionable, the theory of continuous

12

Ndizeye has identified no recurring contractual, statutory, or other legal obligation breached by the City in the six months before he presented his claim in June 2023. All the cases he cites as support for applying the continuous accrual doctrine involved such an obligation. (See *Howard Jarvis Taxpayers Assn. v. City of La Habra* (2001) 25 Cal.4th 809, 812 [monthly collection of tax]; *Green v. Obledo* (1981) 29 Cal.3d 126, 141 [monthly welfare payments]; *Gilkyson v. Disney Enterprises, Inc.* (2016) 244 Cal.App.4th 1336, 1343 [periodic royalty payments under contract]; *Armstrong Petroleum Corp. v. Tri-Valley Oil & Gas Co.* (2004) 116 Cal.App.4th 1375, 1378 [monthly payments and deliveries under contract].) Absent "a continuing or recurring obligation" the breach of which "provides all the elements of a claim— wrongdoing, harm, and causation"—the continuous accrual doctrine does not apply. (*Aryeh, supra*, 55 Cal.4th at p. 1199.)

Ndizeye also has identified no wrongful act that the City committed in the six months before he presented his claim and that was "part of a continuous course of conduct without clear end." All the cases he cites as support for applying the continuing violation doctrine involved a series of similar acts that harmed the plaintiff. (See *Richards v. CH2M Hill, Inc.* (2001) 26 Cal.4th 798, 823 [employer's "continuing course of unlawful conduct under the FEHA by refusing reasonable accommodation of a disabled employee or engaging in disability harassment"]; *Komarova v. National Credit Acceptance, Inc.* (2009) 175 Cal.App.4th 324, 345 [creditor's "pattern of unreasonably frequent calling" of debtor at work]; *Pugliese v. Superior Court* (2007) 146 Cal.App.4th 1444, 1453–1454 ["continual domestic abuse over 15-year period"].) The second amended complaint identifies no "pattern of reasonably frequent and similar acts" by the City that harmed Ndizeye.

accrual supports recovery only for damages arising from those breaches falling within the limitations period." (*Ibid.*)

(*Aryeh, supra*, 55 Cal.4th at p. 1198.) His opening brief "identifies a series of discrete, independently actionable alleged wrongs" (*ibid.*), including financial losses from failed courses, a tripping injury, scratches to his vehicle, and poor air quality from irregularly collected trash. "Nor is this a case in which a wrongful course of conduct became apparent only through the accumulation of a series of harms . . . ." (*Ibid.*) Ndizeye contends "the City's negligence in maintaining road safety has been ongoing for over 57 years." The continuing violation doctrine does not apply.

Another ground the City raised in its demurrer was nonliability for negligence. "Except as otherwise provided by statute: [¶] (a) A public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person." (Gov. Code, § 815.) Under this statute, "there is no such thing as common law tort liability for public entities." (*Quigley v. Garden Valley Fire Protection Dist.* (2019) 7 Cal.5th 798, 803.) Rather, "direct tort liability of public entities must be based on a specific statute declaring them to be liable, or at least creating some specific duty of care, and not on the general tort provisions of Civil Code section 1714." (*Eastburn v. Regional Fire Protection Authority* (2003) 31 Cal.4th 1175, 1183 (*Eastburn*); see Gov. Code, § 815.6 [public entity liable for breach of mandatory duty imposed by enactment designed to protect against risk of particular kind of injury when breach causes that kind of injury].) Civil Code section 1714, subdivision (a) provides: "Everyone is responsible, not only for the result of his or her willful acts, but also for an injury occasioned to another by his or her want of ordinary care or skill in the management of his or her property or person, except so far as the latter has, willfully or by want of ordinary care, brought the injury upon himself or herself." If that statute could be used to impose direct liability on a public

14

entity, "the general rule of immunity for public entities would be largely eroded by the routine application of general tort principles." (*Eastburn*, at p. 1183.)

The primary theory of liability Ndizeye asserted in the second amended complaint was negligence. He repeatedly mentioned the City's "neglect" and "negligence" regarding maintenance of public roads and sidewalks. He labeled one of his causes of action "negligence," and sought $100 million in damages "for physical injuries, emotional distress, property damage, and other consequential losses that the Plaintiffs have suffered as a direct result of [the City's] negligence." Ndizeye alleged in the second amended complaint that the City breached its duty of care, but he did not identify in his pleading or in his appellate briefs any statute "creating some specific duty of care" the City allegedly breached. (*Eastburn, supra*, 31 Cal.4th at p. 1183.) "Duty cannot be alleged simply by stating 'defendant had a duty under the law' . . . . Since the duty of a governmental agency can only be created by statute or 'enactment,' the statute or 'enactment' claimed to establish the duty must at the very least be identified." (*Searcy v. Hemet Unified School Dist.* (1986) 177 Cal.App.3d 792, 802; see *Lopez v. Southern Cal. Rapid Transit Dist.* (1985) 40 Cal.3d 780, 795 (*Lopez*) [claims under Act "must be pleaded with particularity"].) "Unless the applicable enactment is alleged in specific terms, a court cannot determine whether the enactment relied upon was intended to impose an obligatory duty to take official action to prevent foreseeable injuries or whether it was merely advisory in character." (*Sullivan v. County of Sacramento* (1987) 190 Cal.App.3d 1070, 1080.) By failing to identify a specific statute or other enactment imposing the duty on which he based his negligence claim, the second amended complaint failed to state facts sufficient to constitute a cause of action.

15

Ndizeye did cite Government Code section 835 in his second amended complaint as a potential basis for imposing liability on the City "for any injuries caused by a dangerous condition on its property," and also cited the statute throughout his appellate briefs. "The sole statutory basis for imposing liability on public entities as property owners is Government Code section 835." (*Cerna v. City of Oakland* (2008) 161 Cal.App.4th 1340, 1347; accord, *City of Los Angeles v. Superior Court* (2021) 62 Cal.App.5th 129, 139.) A cause of action under the statute must allege: (1) a dangerous condition of public property; (2) a proximate causal connection between the dangerous condition and the injury sustained; (3) a reasonably foreseeable risk the injury sustained is of a kind that would result from the dangerous condition; and (4) the public entity created the dangerous condition or had actual or constructive notice of its existence in enough time to have taken remedial action before the injury occurred. (§ 835; *People ex rel. Dept. of Transportation v. Superior Court* (1992) 5 Cal.App.4th 1480, 1484–1485.) "Because recovery is based on a statutory cause of action, the plaintiff must set forth facts in his complaint sufficiently detailed and specific to support an inference that each of the statutory elements of liability is satisfied. General allegations are regarded as inadequate." (*Mittenhuber v. City of Redondo Beach* (1983) 142 Cal.App.3d 1, 5 (*Mittenhuber*).)

The second amended complaint does not contain the required detailed and specific allegations. Ndizeye generally alleged the "hazardous conditions of the roads and sidewalks" in his neighborhood "increase the risk of accidents, limit access to emergency services, and hinder daily commute and transportation." The only allegations of actual personal injuries or property damage concerned two unidentified drivers whose vehicles collided at a "dangerous" intersection in Ndizeye's neighborhood and unidentified

16

"[c]hildren" whose bicycles "tripped on uneven sidewalks." "Generally speaking, a party lacks standing to assert a claim that belongs to another person." (*Limon v. Circle K Stores Inc.* (2022) 84 Cal.App.5th 671, 691.)[5] Nowhere in the second amended complaint did Ndizeye describe a dangerous condition of the street or sidewalk that proximately caused *him* to suffer personal injury or property damage, or allege the City had notice of the dangerous condition in time to prevent the harm.

In his opening brief, Ndizeye alleged he suffered "financial losses" by missing classes and failing courses because of the narrowness of the street, "a debilitating scar" from a tripping injury, "increased utility bills" for maintenance and cleaning required by "scratches and accumulation of debris" on his vehicle, and "poor air quality" and "diminished property value" from irregular trash collection. Such allegations, even if added to Ndizeye's pleading, would not satisfy the requirement that he specifically allege: (1) the dangerous condition (e.g., what did he trip on?); (2) a proximate causal connection between the condition and the alleged injury (e.g., how did the narrowness of the street cause him to fail courses?); (3) the dangerous condition created a reasonably foreseeable risk of the kind of injury he suffered (e.g., how were increased utility bills or poor air quality reasonably foreseeable?); and (4) the City had notice of the dangerous condition in time to prevent his injuries (e.g., when and how did the City have notice of whatever dangerous condition caused him to trip?). Because Ndizeye's

---

[5]    Ndizeye, purporting to act on behalf of himself "and all others similarly situated," included class allegations in the second amended complaint. It appears from the record he is not licensed to practice law in California. Hence, he may represent himself but not other persons in this action. (Bus. & Prof. Code, § 6125; *Birbrower, Montalbano, Condon & Frank v. Superior Court* (1998) 17 Cal.4th 119, 127; *Estate of Sanchez* (2023) 95 Cal.App.5th 331, 339.)

17

general allegations did not state a cause of action under Government Code section 835 and the new facts he asserts in his opening brief do not provide the necessary detail and specificity, the trial court properly sustained the demurrer to the second amended complaint without leave to amend. (*Brenner v. City of El Cajon* (2003) 113 Cal.App.4th 434, 443–444; *Mittenhuber, supra*, 142 Cal.App.3d at p. 5.)

Ndizeye also listed "discrimination" in the section of the second amended complaint where he purported to identify his causes of action. He alleged the City's "apparent maintenance disparity" involved "discrimination against people of color, low-income, [and] disabilities, as the [C]ity seems to be non-compliant with the necessary accessibility standards and regulations. . . . *§504 of the Rehabilitation Act of 1973.*" Earlier in the pleading, Ndizeye alleged the "hazardous conditions of the roads and sidewalks" in his neighborhood "stand[ ] in stark contrast to the well-maintained and spacious roads observed in predominantly white neighborhoods," and suggested such "an alarming disparity in the distribution in public resources and services . . . based on race, color, or national origin" would violate the equal protection clause of the 14th Amendment and Title VI of the Civil Rights Act of 1964 "if there's no justified reason for unequal resource allocation." Ndizeye nowhere described how the City discriminated against him in violation of the cited laws or what injury he suffered as a result. His general allegations do not meet the particularized pleading requirements for a claim against a public entity. (*Lopez, supra*, 40 Cal.3d at p. 795; *Mittenhuber, supra*, 142 Cal.App.3d at p. 5; *Sussman v. City of Los Angeles* (1969) 269 Cal.App.2d 803, 809.) Furthermore, in the claim Ndizeye presented to the City in June 2023, he mentioned only negligence and neglect of duty by the City; he made no

18

reference to any discrimination by the City. Where, as here, the facts underlying a cause of action asserted in a complaint against a public entity were not fairly reflected in the claim presented to the public entity, the cause of action is subject to dismissal. (*Hernandez v. City of Stockton* (2023) 90 Cal.App.5th 1222, 1231; *Donohue v. State of California* (1986) 178 Cal.App.3d 795, 802–803.)

For the reasons discussed above, we conclude the second amended complaint "does not state facts sufficient to constitute a cause of action." (Code Civ. Proc., § 430.10, subd. (e).) We further conclude Ndizeye has not met his burden to show there is a reasonable possibility he could cure the defects by further amendment. (*Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1126; *Herron v. San Diego Unified Port Dist.* (2025) 109 Cal.App.5th 1, 7.) The trial court thus properly sustained the City's demurrer without leave to amend.[6]

B.      *Orders Striking Statements of Disqualification*

We next address Ndizeye's challenge to the trial court's orders striking his statements of disqualification. He complains the court's procedural errors in handling the statements deprived him of his due process right to an impartial tribunal and resulted in prejudice by denying him leave to amend. We are not persuaded.

---

[6]      Our conclusion the trial court correctly ruled on the City's demurrer makes it unnecessary for us to consider Ndizeye's claim the City has no immunity for discretionary acts (Gov. Code, §§ 815.2, subd. (b), 820.2). (See *Caldwell v. Montoya* (1995) 10 Cal.4th 972, 985 ["an immunity provision need not even be considered until it is determined that a cause of action would otherwise lie against the public employee or entity"]; *Rodriguez v. Inglewood Unified School Dist.* (1986) 186 Cal.App.3d 707, 722–723 [no need to discuss immunity when no statutory basis for liability].)

19

Ndizeye forfeited the challenge to the trial court's orders striking his disqualification statements to the extent the challenge is based on statutory grounds for disqualification.  As he acknowledged in his opening brief, "[t]he determination of the question of the disqualification of a judge is not an appealable order and may be reviewed only by a writ of mandate from the appropriate court of appeal sought only by the parties to the proceeding." (Code Civ. Proc., § 170.3, subd. (d).)  Section 170.3, subdivision (d) "specifies the exclusive appellate remedy with regard to a statutory claim that the superior court erred in granting or denying a motion to disqualify a judge." (*Curle v. Superior Court* (2001) 24 Cal.4th 1057, 1063.)  Ndizeye never sought writ review of the trial court's orders striking his statements of disqualification.  His failure to do so bars him from obtaining review of the orders on this appeal.  (*People v. Freeman* (2010) 47 Cal.4th 993, 1000 (*Freeman*); *Rivera v. Hillard* (2023) 89 Cal.App.5th 964, 976.)

Ndizeye's failure to seek writ review does not bar review on this appeal of his claim that the orders striking the disqualification statements violated his right to due process of law (U.S. Const., 14th Amend., § 1; Cal. Const., art. I, § 7, subd. (a)).  (*People v. Peoples* (2016) 62 Cal.4th 718, 787; *Brown v. American Bicycle Group, LLC* (2014) 224 Cal.App.4th 665, 673 (*Brown*).)  Our Supreme Court has cautioned that "the due process clause should not be routinely invoked as a ground for judicial disqualification.  Rather, it is the exceptional case presenting extreme facts where a due process violation will be found." (*Freeman, supra*, 47 Cal.4th at p. 1005.)  Exceptional cases involve a probability of actual bias on the part of the judge (*Peoples*, at p. 787), such as where the judge had a pecuniary interest in the outcome of the case, tried defendants he had decided to charge with contempt, or received a large

20

campaign contribution from a party with a case pending before the judge (*Freeman*, at pp. 1001–1006).

Ndizeye has identified no similar "extreme facts" in this case that would establish a probability the trial judge was actually biased against him. (*Freeman, supra*, 47 Cal.4th at p. 1005.) He complains the trial judge did not "refer the [disqualification statements] to another judge for consideration." But a judge against whom a disqualification statement is filed may strike the statement "if on its face it discloses no legal grounds for disqualification," as the trial judge did in this case. (Code Civ. Proc., § 170.4, subd. (b).) Ndizeye also complains "the trial court proceeded to conduct hearings . . . and issue substantive rulings" while the statements were pending. The only action the trial judge took in the case while the disqualification statements were pending, however, was to continue the hearing on the demurrer. A judge against whom a disqualification statement has been filed may "[s]et proceedings for trial or hearing." (*Id.*, subds. (a)(5), (d).) Ndizeye further complains "the trial court's denial of leave to amend . . . coupled with its procedural error regarding the disqualification [statements] . . . resulted in substantial prejudice to [him]."[7] We already determined the trial court did not prejudicially err by denying leave to amend. In any event, a ruling against a party, even if erroneous, does not establish a probability of bias

---

[7]    In his reply brief, Ndizeye challenges additional rulings that purportedly showed the trial court's actual bias against him and "further compounded the prejudice flowing from" the court's improper handling of the disqualification statements. He complains that the court denied one of his requests for judicial notice, even though it granted the City's request, and that the court continued the hearing on the demurrer without a showing of good cause by the City or proper notice to him. "These reply arguments are forfeited as tardy, because appellant[ ] must give the other side fair notice and an opportunity to respond." (*Schmidt v. Superior Court* (2020) 44 Cal.App.5th 570, 592.)

21

requiring disqualification.  (*McEwen v. Occidental Life Ins. Co.* (1916) 172 Cal. 6, 11; *Rab v. Weber* (2023) 91 Cal.App.5th 1337, 1353; *Brown, supra,* 224 Cal.App.4th at p. 674.)  "In short, the circumstances of this case, as we view them, simply do not rise to a due process violation . . . because, objectively considered, they do not pose ' "such a risk of actual bias or prejudgment" ' [citation] as to require disqualification." (*Freeman*, at p. 1006.)

## III.

## DISPOSITION

The judgment is affirmed.  The City is entitled to recover its costs on appeal.

IRION, Acting P. J.

WE CONCUR:

BUCHANAN, J.

CASTILLO, J.